975 So.2d 511 (2008)
Mari HAUETER-HERRANZ, Alexander Cole International Holdings Ltd., a Bahamian corporation, U.S. Stox Capital Management, Inc., a Florida corporation, and Happy Real Estate, Inc., a dissolved Florida corporation, Appellants,
v.
Agustin Miguel Torres ROMERO, Maria Luz Francisco Fuente, Julio Acebes Gonzalez, Antonio Parro Martin, Luis Alfonso Castelao Medina, Ignacio Bermejo Messeguer, Rafael Salado Osuna, Josep Aulinas Sacrest, Alejandro Miguel Eced, Alvaro Perez Blas, Ana Maria Matas Jimenez, Carlos Sanchez Cortes, and Jose Luis Torrico Bautista, Appellees.
Markus Haueter, Mari Haueter-Herranz, Alexander Cole International Holdings Ltd., a Bahamian corporation, Rocko Holdings Corporation, a Bahamian corporation, U.S. Stox Capital Management, Inc., a Florida corporation, and Happy Real Estate, Inc., a dissolved Florida corporation, Appellants.
v.
Francisco Rodrigo Roncero, Antoni Burguera Brunet, Antonio Munoz Alzamora, Miguel Angel Piano Palomo, Mario Sanchez Velasco, Jose Romero Villanueva, Jesus Menendez Menendez, Jose Luis Fernandez Galan, Roman Sanchez Mateu, Juan Vila Roset, Maria Carmen Astizaran Bilbao, Javier Alonso Marmol, Javier Casielles Perez, Emilia Luisa Lafuente Carrion, Tomas Carrasco Almazan, Juan Manuel Garcia Velasco, Guillermo Sanz Vidal, Manuel Bravo Sanchez, Joan Noguerola Serra, Alicia Torrecillas Casado, Elisa Maria Herrera Trujillo, and Adrian Badia Villas, Appellees.
Nos. 2D05-5686, 2D05-5995.
District Court of Appeal of Florida, Second District.
January 18, 2008.
Rehearing Denied March 11, 2008.
*513 Robert L. Donald of Law Office of Robert L. Donald, Fort Myers, and Sonja K. Burkard of Burkard Law Firm, P.A., Fort Myers (withdrew after briefing); Scott A. Kuhn of Kuhn Law Firm, P.A., Fort Myers (substituted as counsel of record), for Appellants.
Renee Adwar of Renee Adwar, P.A., Miami, and Elisa Worthington of Garvin & Tripp, P.A., Ft. Myers, for Appellees.
SILBERMAN, Judge.
In this consolidated appeal from two underlying actions, the appellants challenge the trial court's nonfinal orders denying their motions to dismiss and to quash service of process. We reverse the orders denying the motions to quash as to Alexander Cole International Holdings Ltd. (Cole) and as to Rocko Holdings Corporation (Rocko). In all other respects, we affirm.
The appellees, a group of thirty-five Spanish citizens (hereinafter the Investors), sued the appellants with respect to investment transactions the appellants had allegedly solicited from the Investors through fraud and other misconduct. The allegations in the two lawsuits are virtually the same, although the named plaintiffs differ in each lawsuit. The Investors asserted claims for fraudulent inducement, fraud, conspiracy to defraud, rescission, and an accounting. Mari Haueter-Herranz (Ms. Haueter), Cole, U.S. Stox Capital Management, Inc. (Stox), and Happy Real Estate, Inc. (Happy) are defendants in circuit court case numbers 05-1087 and 05-1101, and Markus Haueter (Mr. Haueter) and Rocko are defendants only in circuit court case number 05-1101. The Haueters, Stox, and Happy filed motions to dismiss the lawsuits, and Cole and Rocko filed motions to quash service of process.
On appeal, the Haueters, Stox, and Happy raise several issues, arguing that the trial court erred in denying their motions to dismiss. Because they have not demonstrated any reversible error, we affirm the denial of their motions but address certain of their arguments.
*514 Rocko argues that the trial court erred in finding that the Investors properly served it by serving Mr. Haueter as that company's director. Cole argues that the trial court erred in finding that the Investors properly served it by serving Ms. Haueter as that company's vice president. Both of these arguments have merit, requiring reversal.

JURISDICTIONAL AMOUNTS
The Haueters, Stox, and Happy argue that the Investors cannot aggregate their claims to establish the jurisdictional threshold in the underlying cases. See State ex rel. City of West Palm Beach v. Chillingworth, 100 Fla. 489, 129 So. 816, 818 (1930) (concluding that separate and distinct claims that do not arise out of the same transaction, circumstances, or occurrences and that do not arise from a continuous course of dealing cannot be aggregated to confer jurisdiction); see also Johnson v. Plantation Gen. Hosp. Ltd. P'ship, 641 So.2d 58, 60 (Fla.1994) (following Chillingworth). However, they have not established that aggregation is the only manner in which the Investors can meet the jurisdictional threshold.
Section 26.012(2)(a), Florida Statutes (2005), provides that the circuit courts have exclusive, original jurisdiction over "all actions at law not cognizable by the county courts." The county courts have original jurisdiction over matters in which the amount in controversy does not exceed $15,000, and the circuit courts have jurisdiction over those matters in which the amount in controversy exceeds $15,000. §§ 26.012(2)(a), 34.01(1)(c), Fla. Stat. (2005).
In circuit court case number 05-1087, thirteen plaintiffs (constituting a portion of the Investors) filed an action for damages in excess of $15,000. They alleged that they transferred over $200,000 to Cole's bank account and that certain of the appellants absconded with the funds. In circuit court case number 05-1101, twenty-two plaintiffs (constituting the remaining portion of the Investors) filed an action for damages in excess of $15,000. They alleged that they transferred approximately one million dollars to Rocko and Cole and that the appellants absconded with the funds.
Ms. Haueter, Stox, and Happy filed motions to dismiss in both cases,[1] and Mr. Haueter filed a motion to dismiss in case number 05-1101. The motions asserted that the trial court lacked subject matter jurisdiction in both cases because it appeared each individual plaintiff's claim was less than $15,000. In her motion to dismiss in case number 05-1087, Ms. Haueter also asserted that "[t]he complaint referred to Plaintiffs composite Exhibit 3 reflecting the individual transfers sent by Plaintiffs." She claimed that the exhibit "contains hard to read copies of money transfers in Spanish language which seem to show that each individual Plaintiff seemed to have transferred funds below the jurisdictional amount."[2]
Mr. Haueter's motion to dismiss was less explicit than Ms. Haueter's motion. He merely argued that the complaint in case number 05-1101 does not contain a statement or exhibit proving the amount of the individual money transfers on behalf of the individual investors. However, he does not suggest that any of the individual *515 investors cannot meet the $15,000 jurisdictional threshold or claim that their general jurisdictional allegations are in bad faith.
The trial court denied the motions to dismiss, finding that "Plaintiffs have properly and in good faith pled in their complaint the jurisdictional amount appropriate for Circuit Court Jurisdiction." We agree.
Jurisdiction of the circuit court depends on the good faith allegations of the plaintiffs, not on the trial court's preliminary determination of the amount which they may actually recover. The rule for "determining the jurisdiction of a court as to the amount involved is the amount claimed in good faith."
Grunewald v. Warren, 655 So.2d 1227, 1229 (Fla. 1st DCA 1995) (citations omitted). "[T]he valuation fixed by the pleadings is to be accepted as true if made in good faith and not for the illusory purpose of conferring jurisdiction." Neumann v. Brigman, 475 So.2d 1247, 1249 (Fla. 2d DCA 1985). Any ambiguity with respect to satisfying the jurisdictional amount should be resolved in favor of the plaintiff. See id.
The Investors adequately alleged that the amount in controversy is sufficient to confer subject matter jurisdiction in the trial court. The Haueters, Stox, and Happy have not demonstrated that any individual investor is claiming damages below the jurisdictional threshold, that the allegations were made in bad faith, or that jurisdiction could only exist through the aggregation of individual claims. Further, Ms. Haueter's argument in case number 05-1087 is based on a document that she acknowledges is unclear and difficult to read. The document is not sufficient to controvert the Investors' jurisdictional allegations, and the record otherwise does not reflect that any individual investor did not in good faith plead a claim for damages in excess of $15,000. Accordingly, we find no reversible error with respect to the jurisdictional amount.

PERSONAL JURISDICTION BASED UPON FLORIDA RESIDENCE
The Investors alleged in the trial court that the Haueters are Florida residents, that the Haueters and others engaged in acts of fraud and other misconduct, that the misconduct "was conceived, organized, and executed from Florida," and that "Florida is where the illegal activity was conducted." In challenging personal jurisdiction the Haueters filed affidavits denying that they had engaged in any misconduct, that they had undertaken any acts in relation to the Investors and the alleged investments, or that they had acted on behalf of others. Mr. Haueter acknowledged that he resides with his wife and children in Palm Beach County. However, he asserted, among other things, that he is a citizen of Switzerland, he resides in Florida on a non-immigrant visa, and he does not consider himself to be a legal resident of Florida because he has no intention of making Florida his permanent place of abode. Ms. Haueter admitted that she resides in Palm Beach County in a home that she purchased in January 2005. However, she asserted that she is a citizen of Spain and Switzerland but resides in Florida on a non-immigrant visa and did not intend to stay in Florida indefinitely.
On appeal, the Haueters argue that the trial court cannot exercise long-arm jurisdiction over them. They acknowledge that they reside in Florida but contend that a Florida court cannot exercise personal jurisdiction over them under the long-arm statute because they have non-immigrant visas, they do not intend to permanently remain in Florida, and they did not engage in any misconduct.
*516 We reject this argument. The Haueters reside in Florida and are being sued in Florida for actions that allegedly took place here. "As to residents of Florida, the Circuit Courts have jurisdiction over them regardless of the county in which they reside and when reached by summons, they become subject to the orders and decrees of the Court." Patten v. Mokher, 134 Fla. 433, 184 So. 29, 30 (1938); see also Davis v. State, 928 So.2d 442, 448 (Fla. 5th DCA 2006) (same). In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla.1989), the Florida Supreme Court recognized that the long-arm jurisdiction statute sets forth the legislature's determination as to "the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned." (Emphasis added).
Even assuming that the long-arm statute is analytically relevant to their circumstances, the Haueters' affidavits do not establish that they are not engaged in substantial and not isolated activity within this state. See § 48.193(2), Fla. Stat. (2005) (providing for jurisdiction over a defendant who is engaged in substantial and not isolated activity within Florida whether or not the claim arises from that activity); Gerber Trade Fin., Inc. v. Bayou Dock Seafood Co., Inc., 917 So.2d 964, 966-68 (Fla. 3d DCA 2005) (recognizing that the long-arm statute provides for two categories of personal jurisdiction: general jurisdiction under section 48.193(2) and specific jurisdiction under section 48.193(1)(b), and concluding that the defendant's affidavits were insufficient to contest the propriety of personal jurisdiction over it in Florida); Venetian Salami, 554 So.2d at 502 (stating that when a nonresident defendant wishes to challenge the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts, the defendant must file affidavits in support of his or her position).
Here, the Haueters' affidavits confirm that they reside in Florida and do not establish that they maintain residences elsewhere or that they are not engaged in substantial and not isolated activity in this state. They have not shown that the trial court erred in denying their motions to dismiss concerning jurisdiction.

AGREEMENT TO ARBITRATE
The Haueters, Stox, and Happy contend in bare-bones fashion that the trial court erred in denying their motions to dismiss because the Investors signed documents containing arbitration agreements. The Investors respond that the arbitration agreements do not apply because the wrongdoing giving rise to their claims occurred before the agreements were signed and because the agreements are ambiguous.
An unsigned arbitration agreement is contained in the appendices submitted to this court, which is apparently an exemplar of agreements allegedly signed by Cole and some or all of the Investors.[3] The agreement provides as follows:
All and any present and future legal disputes possibly resulting from the present Arbitration Agreement for what legal causes ever [sic] (contract demands, inadmissible acts etc.) among the Parties, including those concerning the interpretation and validity of the present Arbitration Agreement shall be subject to an arbitration procedure in accordance with the stipulations of the Arbitration Act, Chapter 168 of the Laws of *517 the Commonwealth of the Bahamas. The execution of claims by Supreme Court of the Bahamas shall be expressly excluded.
The appendices do not include arbitration agreements for all of the Investors or establish that all Investors were parties to arbitration agreements. Further, nothing in the documents provided to this court establishes that the Haueters, Stox, or Happy are parties to any arbitration agreements or that they are entitled to invoke the provisions of any arbitration agreements between the Investors and Cole. In fact, the Haueters asserted in their motions to dismiss that the arbitration agreements require arbitration in the Bahamas, but they acknowledged that they have "no official right to demand arbitration in the Bahamas."
The agreement language specifies that the disputes that would be submitted to arbitration are "legal disputes possibly resulting from the present Arbitration Agreement." The Haueters, Stox, and Happy have failed to demonstrate that the Investors' claims against them are disputes that fall within that description.
The trial court gave several reasons for rejecting the contentions as to arbitration, including that "[t]he arbitration clause in the Cole contract does not govern the present dispute as all of the transfers of funds at issue were done prior to the Cole contract, the alleged wrongdoing occurred before the agreement was signed." The court also observed that the arbitration language is ambiguous and is to be construed against Cole as the drafter. Based on the limited arguments on appeal and the information contained in the documents provided to this court, we conclude that the Haueters, Stox, and Happy have failed to demonstrate any reversible error by the trial court on this issue.

MOTION TO QUASH SERVICE ON ROCKO
In case number 05-1101, the Investors alleged in their unsworn complaint that Mr. Haueter "was at all times, at the very least, an agent transacting business for Rocko in the State of Florida." The return of service for Rocko indicates that Mr. Haueter was served as Rocko's director "in the absence of any superior officer or director as defined by Florida statute."
Rocko filed a motion to quash service of process, alleging that it had not been properly served. In support, it filed an affidavit by Mr. Haueter. He stated in the affidavit that he purchased Rocko, a Bahamian corporation, in 1999 and served as its president for about two or three months while he "set up the framework for the corporation." He sold Rocko in mid-1999 and, since that time, he has never been an authorized or appointed officer, director, agent, or shareholder of Rocko and has never conducted any business for Rocko in Florida or elsewhere.
The trial court denied the motion to quash, stating that the Investors had served Mr. Haueter as director of Rocko in compliance with section 48.081, Florida Statutes (2005). Section 48.081 provides in pertinent part as follows:
(1) Process against any private corporation, domestic or foreign, may be served:
(a) On the president or vice president, or other head of the corporation;
(b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;
(c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
(d) In the absence of any person described in paragraph (a), paragraph (b), *518 or paragraph (c), on any officer or business agent residing in the state.
(2) If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on any agent transacting business for it in this state.
A return of service that is regular on its face is presumed to be valid unless clear and convincing evidence is presented to the contrary. Nat'l Safety Assocs., Inc. v. Allstate Ins. Co., 799 So.2d 316, 317 (Fla. 2d DCA 2001). The party challenging service has the burden of overcoming the presumption of validity. Dep't of Rev. ex rel. Williams v. Wright, 813 So.2d 989, 992 (Fla. 2d DCA 2002). If the party challenging service "makes a prima facie showing that the return is defective, then the burden shifts to the person acting under the substituted service provision to prove valid service." Gonzalez v. Totalbank, 472 So.2d 861, 864 n. 1 (Fla. 3d DCA 1985).
Here, the Investors did not submit any evidence in response to Mr. Haueter's affidavit, and their complaint was unsworn. Although the Investors refer to various documents in a memorandum filed in the trial court, nothing in the appendices reflects that these documents were placed into evidence. The submission of a memorandum and unsworn documents to refute Mr. Haueter's affidavit was insufficient to meet the Investors' burden of establishing valid service. See Citizens & S. Bank of Atlanta v. Popkin, 281 So.2d 522, 524 (Fla. 3d DCA 1973) (concluding that once the defendant made a prima facie showing that substituted service was improper, the plaintiff's mere submission of a memorandum without a supporting affidavit was insufficient to meet the plaintiff's burden of establishing valid service). Thus, we reverse the trial court's order denying Rocko's motion to quash service.

MOTION TO QUASH SERVICE ON COLE
The Investors alleged in their unsworn complaints that Ms. Haueter "was at all times, at the very least, an agent transacting business for Cole in the State of Florida." The returns of service indicate that Ms. Haueter was served as Cole's vice president "in the absence of any superior officer or director as defined by Florida statute."
Cole filed motions to quash service of process in both of the underlying cases. In support, it filed affidavits by Ms. Haueter. She stated in her affidavits that she has never been an officer, director, agent, or shareholder of Cole. She acknowledged introducing Cole's president to a bank officer and helping facilitate communication between Cole and the bank. She also acknowledged that at the request of Cole's president, she allowed her personal address to be used to avoid mailing delay between Florida and the Bahamas. But she stated that she has never had the authority to act for Cole, has not assumed or performed any duties as an officer or agent of Cole, and has not conducted any business in Florida or elsewhere for Cole.
The trial court denied Cole's motions to quash service of process, again finding that the Investors had complied with section 48.081. However, nothing in the appendices reflects that the Investors submitted any evidence, other than the returns of service, in opposition to Ms. Haueter's affidavits. For the same reasons that we reverse the trial court's order denying Rocko's motion to quash service, we also reverse the orders denying Cole's motions to quash service.

CONCLUSION
In summary, we affirm as to all issues except that we reverse the trial court's *519 orders denying the motions to quash service as to Cole and Rocko.
Affirmed in part, and reversed in part.
FULMER and LaROSE, JJ., Concur.
NOTES
[1] In their appendix, Stox and Happy included only the first two pages of their motions in the two underlying cases, and Ms. Haueter included only the first two pages of her motion in circuit court case number 05-1101.
[2] This exhibit is not included in the appendices.
[3] The appendices also include an arbitration agreement that was signed by Jose Luis Torrico Bautista in June 2002. It does not reflect that anyone signed on Cole's behalf. The language in that agreement is identical to the exemplar.