BENTON, C.J.
Laurie Green appeals denial of her motion to quash service of process, on grounds the trial court should have assumed the affidavits before it were true in deciding the motion. The affidavits before the trial court can all be reconciled consistently with her contention that the house where papers were served on her sister was not her usual place of abode at the time. Accordingly, we reverse the denial of the motion to quash.
We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i) to review non-final orders that determine personal jurisdiction. See Fisher v. Int’l Longshoremen’s Ass’n, 827 So.2d 1096, 1097 (Fla. 1st DCA 2002). At issue here is section 48.031(1)(a), Florida Statutes (2008), which allows for substitute service by “leaving the copies at [the defendant’s] usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents.”
“The requirement ‘usual place of abode’ means ‘the place where the defendant is actually living at the time of service.’ ” Thompson v. State, Dep’t of Revenue, 867 So.2d 603, 605 (Fla. 1st DCA 2004) (quoting Shurman v. Atl. Mortgage & Inv. Corp., 795 So.2d 952, 954 (Fla. 2001)). “The word ‘abode’ means ‘one’s fixed place of residence for the time being when service is made.’ If a person has more than one residence, he must be served at the residence in which he is actually living at the time of service.” Toms v. Arnco Constr., Inc., 867 So.2d 583, 586 (Fla. 5th DCA 2004) (quoting State ex rel. Merritt v. Heffeman, 142 Fla. 496, 195 So. 145, 147 (1940)).
The standard of review for a non-final order that determines jurisdiction over a person in a case like this is de novo. See Bank of Am., N.A. v. Bornstein, 39 So.3d 500, 502 (Fla. 4th DCA 2010) (citing Re-Employment Servs. Ltd. v. Nat’l Loan Acquisitions Co., 969 So.2d 467, 470 (Fla. 5th DCA 2007)). The trial court did not order an evidentiary hearing.
After Mike Jorgensen filed a complaint against Ms. Green on November 19, 2008, a private process server delivered suit papers to Ms. Green’s sister, Elizabeth Domnisch,[1] at the sister’s house in Pennsylvania (the Pennsylvania address) on December 3, 2008. The return of service (unsigned as far as the record reveals) recited that the process server “substitute served” Ms. Green’s sister at her usual place of abode,[2] but also stated that, when the process server knocked on the door, a woman with a baby in her arms came to the door and yelled, “[S]he does not live here.” The return reported, moreover, that the process server spoke with a neighbor who disavowed any knowledge of Ms. Green, telling him that “a” woman (with a child) lived at the Pennsylvania address.
*797 Ms. Green originally filed a motion to dismiss for insufficient service of process, attaching four supporting affidavits. Her sister and brother-in-law swore that they lived at the Pennsylvania address with each other (and their child), and that Ms. Green did not live there at the time of service. The other two affidavits were from Chicagoans, both of whom averred that they personally knew Ms. Green, saw her on a daily basis, and that she was living in Chicago on the date the papers were left at the Pennsylvania address.
In response to this motion, Mr. Jorgen-sen filed a certified copy of Ms. Green’s Florida Department of Highway Safety and Motor Vehicles record, which listed the Pennsylvania address as Ms. Green’s home address, and indicated that she had provided the address in August of 2008. He also filed an arrest report, dated November 19, 2008 — only fourteen days before the papers were delivered in Pennsylvania — in which Ms. Green had provided the Pennsylvania address as her home address, and the arresting officer’s affidavit which averred that he habitually verified arrestees’ biographical information, including home addresses, during booking.
The trial court denied the motion to dismiss for insufficient service of process, noting the absence of any affidavit executed by Ms. Green herself. Ms. Green then filed an emergency motion for reconsideration, to which she attached her own personal affidavit, swearing that, at the time of service, she was living in Chicago, at an address she provided, and that she began living at the Chicago address on November 23, 2008. The trial court found her personal affidavit sufficient to warrant de novo reconsideration of the motion to dismiss, which, however, the trial court directed be refiled as a motion to quash service of process.
Thereupon Ms. Green filed a motion to quash service of process, arguing that she was not living at the Pennsylvania address at the time of service, was not served at her “usual place of abode,” and that service of process on her sister was insufficient under section 48.031, Florida Statutes. To this motion, she attached a new personal affidavit identical in substance to the first personal affidavit she filed, except that she added “W” before the street name in her Chicago address. Ms. Green’s driver’s license number in the jurat of the new affidavit was blacked out, with what appeared to be the notary public’s initials placed next to the deletion. Ms. Green also attached to the motion to quash service of process all four affidavits she had originally attached to her motion to dismiss, along with the arrest report, and the return of service.
At a hearing on the motion, Mr. Jorgen-sen argued that Ms. Green had altered the jurat in her personal affidavit. He offered an affidavit of the notary public, who denied blacking out the driver’s license number and affixing his initials next to the deletion. Ms. Green later filed a counter-affidavit asserting that she had requested the notary public to omit her driver’s license number, that he did not do so at first, but that, after he walked away to discuss the matter with his co-workers, he slid the affidavit back to Ms. Green with a black line through the driver’s license number and his initials next to the line.
The trial court denied the motion to quash, finding that Ms. Green had imper-missibly altered the jurat in an affidavit submitted to the court and that her actions effecting the alteration destroyed or impaired the credibility both of her personal affidavit and of the affidavits filed by the two (other) Chicago residents. The trial court also found Ms. Green’s sister’s affidavit not credible, because of the family *798 relationship, a rationale that may have extended to her brother-in-law’s affidavit, as well. The trial court declined to quash service of process, ruling that all five[3] affidavits offered in support of the motion to quash were unworthy of belief and that Ms. Green had failed to meet her “burden.”
But the “burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court,” i. e., the plaintiff, not the defendant. Thompson, 867 So.2d at 605 (citing M.J.W. v. Dep’t of Children & Families, 825 So.2d 1038, 1041 (Fla. 1st DCA 2002)). The general rule is that a “ ‘process server’s return of service on a defendant which is regular on its face is presumed to be valid absent clear and convincing evidence presented to the contrary.’ ” Id. (quoting Telf Corp. v. Gomez, 671 So.2d 818 (Fla. 3d DCA 1996)). “If the party challenging service ‘makes a pri-ma facie showing that the return is defective, then the burden shifts to the person acting under the substituted service provision to prove valid service.’ ” Haueter-Herranz v. Romero, 975 So.2d 511, 518 (Fla. 2d DCA 2008) (quoting Gonzalez v. Totalbank, 472 So.2d 861, 864 n. 1 (Fla. 3d DCA 1985)).
In the present case, while suit papers were presumably delivered on December 3, 2008, as reported, the return of service gave rise to no presumption that Ms. Green lived with her sister at the time. See Cordova v. Jolcover, 942 So.2d 1045, 1047 (Fla. 2d DCA 2006). In Cordova, the process server who served papers on Mr. Cordova’s estranged wife (because he could not locate Mr. Cordova, the defendant) noted in the affidavit of service that the estranged wife “stated Husband left the country.” Id. The Second District found that “[o]n its face, the affidavit of service raised a concern as to Mr. Cordo-va’s usual place of abode.” Id. In the present case, too, the return of service, quite apart from technical irregularities and deficiencies, raises substantial questions as to whether the Pennsylvania address was Ms. Green’s usual place of abode at the time the papers were delivered, and so fails to give rise to a presumption of valid, substitute service.
Absent conflicting affidavits on the only material issue here — Ms. Green’s place of abode — there was no obligation for the trial court to conduct an evidentiary hearing. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 503 (Fla.1989) (holding that, where affidavits cannot be reconciled, the trial court will have to hold a limited evidentiary hearing to determine the jurisdictional issue); Mowrey Elevator Co. of Fla., Inc. v. Automated Integration, Inc., 745 So.2d 1046, 1047 (Fla. 1st DCA 1999) (remanding for an evidentiary hearing where affidavits submitted by the parties conflicted on the “critical” jurisdictional issue). The only conflict in the affidavits submitted in the present case was on the question whether Ms. Green altered the jurat in an affidavit — not on the question where Ms. Green was living on December 3, 2008. There was no need for the trial court to conduct an evidentiary hearing, and it did not do so.
Mr. Jorgensen failed to rebut Ms. Green’s contention that she did not reside at the Pennsylvania address on the date suit papers were delivered. Each party’s documents can all be assumed true and still be reconciled. The Florida driver’s records and arrest report support an inference that Ms. Green was living at the Pennsylvania address at some earlier time. But they do not contradict the five affida *799 vits that Ms. Green filed stating that Ms. Green was not living at the Pennsylvania address at the time her sister received the papers. Ms. Green’s affidavit states that she moved to Chicago on November 23, 2008, and no affidavit before the learned trial judge said otherwise.
Without an evidentiary hearing, it was not for the trial court to weigh the credibility of affidavits in no way inherently implausible. See Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle, 955 So.2d 598, 603 (Fla. 2d DCA 2007) (“the question for the trial court was whether, taking the allegations in the affidavits as true, there was a basis for jurisdiction”). Accordingly, we reverse and remand with instructions to grant the motion to quash service of process.
Reversed and remanded, with instructions.
WETHERELL and ROWE, JJ., concur.

. At the time, Ms. Domnisch was not a party to the lawsuit. The complaint was subsequently amended to add a conspiracy count naming Ms. Domnisch as a co-conspirator and defendant.

. This form allegation notwithstanding, it was clear from the return as a whole that the process server had no personal knowledge regarding Ms. Green's residence and received no information (except from the plaintiff or his counsel) that supported the view that Ms. Green was living with her sister at the time.

. The affidavit with the lined-through jurat was a sixth (duplicative) affidavit.