## PANSY WALTERS CLARK v. CARL CLARK

30 So. (2nd) 170  
.April 11, 1947  
Rehearing Denied May 12, 1947

January Term, 1947  
Division A

*William J. Pruitt* and *William F. Brown, Jr.,* for appellant.  
*Weintraub & Martin,* for appellee.

TERRELL, J.:

In November, 1946, appellee as complainant, filed a sworn bill of complaint praying for divorce from appellant as defendant, on the ground of extreme cruelty. The bill also prayed for custody of his minor child, Patricia Coral Clark, and for an accounting of moneys sent defendant while he was in military service. Summons in chancery was directed to defendant at 7616 N. W. 5th Court, Miami, and a copy thereof was left with her father November 17, 1945, at that address. On December 4, 1945, decree pro confesso was entered against defendant for failure to plead, answer, or demur to the bill. A special master was appointed, testimony was taken and on January 14, 1946, the chancellor entered a final decree, granting the divorce and awarding the custody of the minor child to complainant. A rehearing was denied and this appeal was prosecuted from the final decree.

Several questions are urged but we have reached the conclusion that the service on defendant was insufficient so nothing more than slight reference need be made to the other questions raised.

The bill of complaint alleges that complainant and defendant were married at Fort Lauderdale in October, 1932, and lived together until complainant enlisted in the Army in December, 1942; that one child, Patricia Carol Clark, was born to this union in May, 1943; that soon after said child was born, complainant left for overseas duty in the European sector where he was stationed for two and one-half years; that complainant and defendant corresponded regularly during that time and complainant made defendant regular allotments from his compensation; that defendant lived with her mother, Mrs. John Walters, at 7616 5th Court, Miami, while complainant was in the foreign service; that when he was about to embark for home in October, 1945, he wrote her two letters, advising the boat he was leaving on and when he expected to arrive in the United States.

Complainant arrived in New York November 2, 1945, and went at once to Camp Kilmer, from thence he went to Camp Blanding, where he was discharged November 8th, and from there he went immediately to Miami. He sent defendant a message from New York and one from Jacksonville, and when he arrived at Miami, he went at once to the home of his mother-in-law at 7616 N. W. 5th Court, where he expected to find defendant and his baby waiting for him, but to his dismay, defendant had left about three days previous, leaving the baby with her mother, Mrs. Walters. He was advised by the latter that defendant left her home three days before to go to work and had not returned, but that she had sent a telegram from Jacksonville November 5th, as follows: "Forgive me. Headed North. Am O. K. Write later. Keep Tricia." Defendant was next heard from in Seattle, Washington, by letter, marked "General Delivery," stating among other things, that she was on the move.

Complainant filed his bill for divorce November 16, 1945, which in addition to the foregoing, alleges that he has made diligent search for defendant but has not been able to locate

her; that he had no idea of her intention to desert him, and he gave her no cause for doing so. Under this statement of facts, was the substituted service sufficient to give the Court jurisdiction of the person of defendant? It is admitted that a copy of it was left with her father at 7616 N.W. 5th Court, Miami, in due course.

Substituted service is authorized as provided by Section 47.13, Florida Statutes of 1941, by ". . . . leaving such copy at his usual place of abode with some person of the family above fifteen years of age, and informing such person of the contents thereof." Defendant does not deny that copy of the summons was left with her father, but she says that it was insufficient because she had not resided at her mother's home at the given address since November 4, 1945, and that she had no notice whatever of the pending divorce suit against her until January 20, 1946.

The purpose of constructive or substituted service is to bring knowledge of the pending litigation to the defendant in order that he may appear and guard his interests. The fact of leaving it at the place of residence with some person over fifteen years of age contemplates that it will be brought to the attention of the defendant by that person. The allegations of the bill and the testimony both show that such was not done in this case. In fact, it is shown that no member of the family knew where defendant was located so that the service could be communicated to her and that no attempt whatever was made to communicate it.

In this holding we do not overlook State ex rel Merritt v. Hefferman, 142 Fla. 496, 195 So. 145, and similar cases relied on by appellee. The facts in the latter case were materially different from those in the case at bar. There was every reason to presume that service left with Merritt's wife was conveyed to him, but here it is shown that it was not possible to communicate the service left with defendant's father to her. If means are available for defendant to secure the service when left with a member of the family, the Court will presume that it was brought to the attention of defendant, but not so when it is conclusively shown that it could not have been done.

It is therefore our view that the substituted service in this case was insufficient to give the Court jurisdiction of the person of defendant; that she was not accorded her day in court; that she was not given an opportunity to defend the charges against her and to show whether or not they were true or false or to what extent this was the case.

The judgment appealed from is accordingly reversed.

Reversed.

THOMAS, C. J., CHAPMAN, J., and MILLARD B. SMITH, Associate Justice, concur.

29 So. (2nd) 870          January Term, 1947
April 15, 1947          En Banc