795 So.2d 952 (2001)
Gerald R. SHURMAN, Petitioner,
v.
ATLANTIC MORTGAGE & INVESTMENT CORPORATION, Respondent.
No. SC96918.
Supreme Court of Florida.
September 6, 2001.
Gerald R. Shurman, pro se, Orlando, FL, for Petitioner.
Anne S. Mason and Jennifer S. Ebanks of Mason & Associates, P.A., Clearwater, FL, for Respondent.
PER CURIAM.
We have for review Shurman v. Atlantic Mortgage & Investment, 740 So.2d 1221 (Fla. 5th DCA 1999), which expressly and directly conflicts with State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145 *953 (1940). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we quash the decision of the district court.

FACTS
The record reflects that Gerald Shurman was criminally prosecuted, convicted, and incarcerated in state prison in May of 1997. Subsequently, Shurman was named as a defendant in a mortgage foreclosure action commenced in March of 1998 by Atlantic Mortgage & Investment Corporation (Atlantic). Service of process was effected on Shurman by substituted service on his wife, Emily, at their home where they had resided together before Shurman's incarceration. At the time of service of process Shurman was incarcerated in state prison. Because no responsive pleadings were filed by Shurman a default was entered against him in May of 1998. Thereafter, the trial court granted Atlantic's motion for final summary judgment of foreclosure and the property was sold at a foreclosure sale on June 25, 1998, to the second mortgagee.
On January 11, 1999, Shurman filed a motion to set aside the judgment alleging that he was not properly served process in the action and, therefore, the judgment as to his interest in the property was void. Following an evidentiary hearing on Shurman's motion, the trial court concluded that Shurman's "usual place of abode" for purposes of serving process under section 48.031, Florida Statutes (1997), was the residence where he lived with his wife prior to his incarceration and where his wife continued to reside afterward. As such, the trial court found that service was perfected when a copy of the process and complaint was left with Shurman's wife at their marital residence. In light of its finding that service was valid and that Shurman had not demonstrated any meritorious defense to the foreclosure action, the trial court denied Shurman's motion to set aside the judgment.
On appeal, the Fifth District affirmed the trial court's denial of Shurman's motion to set aside the judgment. See Shurman v. Atlantic Mortgage & Inv., 740 So.2d 1221 (Fla. 5th DCA 1999). Relying on Bull v. Kistner, 257 Iowa 968, 135 N.W.2d 545 (1965), and Montes v. Seda, 157 Misc.2d 895, 599 N.Y.S.2d 401, 403 (Sup.Ct.1993), aff'd, 208 A.D.2d 388, 626 N.Y.S.2d 61 (1994), the district court agreed with the trial court's conclusion that service was made at Shurman's "usual place of abode." Shurman, 740 So.2d at 1222. The district court noted that Shurman and his wife had resided at the subject property for years prior to his incarceration and his family continued to reside there afterward. See id. at 1223. Accordingly, the court held that service was valid. See id. Shurman subsequently sought discretionary review in this Court.

ANALYSIS
The issue presented in this case is whether Shurman was properly served at his "usual place of abode" as required under section 48.031, Florida Statutes (1997). Shurman argues that since he was incarcerated at the time of service his "usual place of abode" was prison and, as such, he should have been served there in order to be afforded due process. By contrast, Atlantic asserts that an incarcerated party's "usual place of abode" is where the party resided prior to incarceration if the party's family continues to reside there.
It is well settled that the fundamental purpose of service is "to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and, therefore, to vest jurisdiction in the court entertaining the controversy." State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 147 (1940); see also Klosenski *954 v. Flaherty, 116 So.2d 767, 768 (Fla.1959) (quoting Heffernan); Clark v. Clark, 158 Fla. 731, 30 So.2d 170, 171 (1947) ("The purpose of constructive or substituted service is to bring knowledge of the pending litigation to the defendant in order that he may appear and guard his interests."); Gribbel v. Henderson, 151 Fla. 712, 10 So.2d 734, 739 (1942); Arcadia Citrus Growers Ass'n v. Hollingsworth, 135 Fla. 322, 185 So. 431, 434 (1938). In other words, the purpose of this jurisdictional scheme is to give the person affected notice of the proceedings and an opportunity to defend his rights.
Section 48.031, Florida Statutes (1997), provides in pertinent part:
(1)(a) Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents.
§ 48.031(1)(a), Fla. Stat. (1997). Section 48.031 expressly requires that substituted service be at the person's "usual place of abode." Id. Further, because of the importance of litigants receiving notice of actions against them, statutes governing service of process are to be strictly construed and enforced. See Schupak v. Sutton Hill Assocs., 710 So.2d 707, 708 (Fla. 4th DCA 1998); Aero Costa Rica, Inc. v. Dispatch Servs., Inc., 710 So.2d 218, 219 (Fla. 3d DCA 1998); Hauser v. Schiff, 341 So.2d 531, 531 (Fla. 3d DCA 1977).
In Heffernan, this Court defined the term "usual place of abode" as meaning the place where the defendant is actually living at the time of service. See Heffernan, 195 So. at 147. In so doing, we quoted favorably from Eckman v. Grear, 14 N.J. Misc. 807, 187 A. 556 (Com.Pl. 1936), and Mygatt v. Coe, 63 N.J.L. 510, 44 A. 198 (Sup.Ct.1899):
We quote further from the case of Eckman v. Grear, 187 A. 556, 558, 14 N.J.Misc. 807:
"Going one step further, `usual place of abode' is the place where the defendant is actually living at the time of the service. The word abode means one's fixed place of residence for the time being when the service is made. Thus, if a person have several residences, he must be served at the residence in which he is actually living at the time service is made."
And in Mygatt v. Coe, 63 N.J.L. 510, 512, 44 A. 198, 199, the following pertinent statement appears:
"The statute does not direct service to be made at the `residence' of the defendant, but at his `dwelling house' or `usual place of abode,' which is a much more restricted term. As was said in Stout v. Leonard, 37 N.J.L. 492, many persons have several residences, which they permanently maintain, occupying one at one period of the year and another at another period. Where such conditions exist, a summons must be served at the dwelling house in which the defendant is living at the time when the service is made."
Heffernan, 195 So. at 147. See also Milanes v. Colonial Penn Ins. Co., 507 So.2d 777, 778 (Fla. 3d DCA 1987); Panter v. Werbel-Roth Securities, Inc., 406 So.2d 1267, 1268 (Fla. 4th DCA 1981); Hauser, 341 So.2d at 532.
Not surprisingly, in applying the definition of the term "usual place of abode" set forth in Heffernan, courts have frequently invalidated substituted service of process in cases where the defendant was not actually living at the place where service was made. See, e.g., Alvarez v. State Farm Mutual Auto Ins. Co., 635 So.2d 131, 132 *955 (Fla. 3d DCA 1994) (invalidating substituted service on defendant's cousin where affidavits and supporting documentation, including a telephone bill and marriage license, established defendant was not living at that address on the date of service); Milanes, 507 So.2d at 778 (noting that service of process on the residence of defendant's ex-wife did not satisfy section 48.031); Stern v. Gad, 505 So.2d 531, 532 (Fla. 3d DCA 1987) (holding mere ownership of a condominium and service upon the wife of an owner will not suffice to establish "usual place of abode," when defendant submitted affidavit that he was not in the jurisdiction on the date of purported service and did not reside in the United States); Gonzalez v. Totalbank, 472 So.2d 861, 864 (Fla. 3d DCA 1985) (invalidating substituted service where wife was separated from husband and no longer living at address where service was attempted); Panter, 406 So.2d at 1268 (finding substituted service at home of appellant's father invalid where uncontradicted affidavits stated appellant was living in Michigan when service was made). Notably, several of these cases involved familial relationships where presumably the defendant would be more likely to receive notice, yet the courts still invalidated the service of process because the defendant was not actually living at the place where service was made. See Alvarez, 635 So.2d at 132 (substituted service on defendant's cousin); Stern, 505 So.2d at 532 (substituted service on wife); Panter, 406 So.2d at 1268 (substituted service on appellant's father).
In this case it is uncontradicted that Shurman had been incarcerated in prison in May of 1997 and had not been living with his wife for at least nine months prior to the time substituted service was effected. Although Atlantic argues that Shurman's "usual place of abode" was where he lived with his family before being incarcerated, Shurman was "actually living" in prison at the time of service. Thus, under our obligation to strictly construe the statutory notice provisions and our analysis in Heffernan, it is apparent that Shurman's "usual place of abode" was prison, not his prior residence. See Heffernan, 195 So. at 147.
We find additional support for our decision in Heffernan and our conclusion that prison was Shurman's "usual place of abode" in Fidelity & Deposit Co. v. Abagnale, 97 N.J.Super. 132, 234 A.2d 511 (1967), and Saienni v. Oveide, 355 A.2d 707 (Del.Super.Ct.1976).[1] In Abagnale, the court rejected the defendant's argument that he could be reached by substituted service in New Jersey while he was incarcerated out-of-state. The court explained:
The law in this State has developed in somewhat rigid conformity to the principle that provisions for substituted service, being in derogation of the common law, must be strictly construed. Hence, the rule has been consistently applied *956 that one's "dwelling house or usual place of abode" is limited in its meaning to the place where one is "actually living" at the time when service is made.... The expectation that a defendant will normally receive notice of process served through a competent member of his household living at the same place of abode as he, does not, it seems to me, prevail in the setting of familial disorganization frequently ensuing where the head of the household is committed to prison.
Abagnale, 234 A.2d at 519 (citations omitted). While the court recognized some jurisdictions had concluded that an incarcerated party's usual place of abode continues to be where his family resides, it distinguished those cases on the basis that they were "largely influenced, if not governed, by a hybrid of residence and domicile." Id.
The Delaware court in Saienni followed Abagnale and held that the defendant, who was incarcerated in Pennsylvania, was not properly served at his usual place of abode by substituted service on his wife in Delaware. The court noted that in Delaware a person's usual place of abode is not the equivalent of his domicile. See Saienni, 355 A.2d at 708. Rather, for purposes of substituted service, a defendant must be served at the place where he is actually living at the time service is made. See id. (citing Whetsel v. Gosnell, 181 A.2d 91 (Del.1962)). Relying on Abagnale and Whetsel, the court concluded that the defendant's usual place of abode was the Pennsylvania State Correctional Institution since that was where the defendant was physically living at the time of service. See id. We find the reasoning of the courts in Abagnale and Saienni persuasive in this case.
As stated previously, the object of all process is to impart to the person affected notice of the proceeding and an opportunity to defend his rights. See Klosenski, 116 So.2d at 768; Clark, 30 So.2d at 171; Gribbel, 10 So.2d at 739; Heffernan, 195 So. at 147; Arcadia Citrus Growers Ass'n, 185 So. at 434. By applying the definition of "usual place of abode" set forth in Heffernan to the facts in this case, we are adhering to this underlying principle. Further, it is clear that the Legislature contemplated that people in prison would be sued and served with process. Section 48.051, Florida Statutes (1997), provides that "[p]rocess against a state prisoner shall be served on the prisoner." Id. Cf. State ex rel. Page v. Hollingsworth, 117 Fla. 288, 157 So. 887 (1934). Had the Legislature intended the term "usual place of abode" to apply differently to prisoners, it could have so stated. Hence, we see no need to depart from Heffernan in cases involving prisoners.
In sum, we adhere to Heffernan and reaffirm that for purposes of substituted service one's "usual place of abode" is where the person is actually living at the time of service. In this case, it is uncontroverted that Shurman was actually living in prison at the time substituted service was made on his wife at their marital residence. Thus, Shurman was not properly served at his usual place of abode as required under section 48.031(1)(a), Florida Statutes (1997). Accordingly, we quash the decision of the district court of appeal and remand for further proceedings consistent herewith.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion, in which HARDING, J., concurs.
WELLS, C.J., concurring.
I concur in result only in this case. I conclude that this decision should be controlled by the plain meaning of section *957 48.051, Florida Statutes, which states: "Process against a state prisoner shall be served on the prisoner." I would read this to mean that process should be served on the prisoner at the prison. I do not believe reliance on section 48.031(1)(a), Florida Statutes, is appropriate.
HARDING, J., concurs.
NOTES
[1] We recognize that the majority of jurisdictions have reached a different conclusion. See Blue Cross & Blue Shield v. Chang, 109 F.R.D. 669 (E.D.Mich.1986); Bohland v. Smith, 7 F.R.D. 364 (E.D.Ill.1947); Grant v. Dalliber, 11 Conn. 234 (1836); Bull v. Kistner, 257 Iowa 968, 135 N.W.2d 545 (1965); Fidelity & Deposit Co. v. Boundy, 236 Mo.App. 656, 158 S.W.2d 243 (1942); Walker v. Stevens, 52 Neb. 653, 72 N.W. 1038 (1897); Montes v. Seda, 157 Misc.2d 895, 599 N.Y.S.2d 401 (Sup.Ct.1993), aff'd, 208 A.D.2d 388, 626 N.Y.S.2d 61 (1994); Smith v. Hooton, 3 Pa.D. 250 (1894). See generally Allen E. Korpela, Annotation, Construction of Phrase "Usual Place of Abode," or Similar Terms Referring to Abode, Residence, or Domicil, as Used in Statutes Relating to Service of Process, 32 A.L.R.3d 112, § 16 (1970). However, we believe that the better view is that one's "usual place of abode" is where the person is actually living at the time of service, even in cases involving prisoners.