ROTHENBERG, J.
The defendant, Monica Vives (“Ms. Vives”), appeals from the denial of her motion to vacate the final judgment of foreclosure entered in favor of Wells Fargo Bank, N.A., etc. (“Wells Fargo”), and motion to cancel the foreclosure sale. We remand with instructions.
This appeal stems from a foreclosure action filed on March 4, 2009, by Wells Fargo against Ms. Vives, in which Wells Fargo sought to re-establish a lost or destroyed promissory note (Count I), and foreclose a mortgage on Ms. Vives’ home that Wells Fargo now owns and holds (Count II). The process server’s verified return of service was returned on March 21, 2009, indicating that substitute service *11 of process was effected at Ms. Vives’ home on March 19, 2001, on an unnamed individual.
Ms. Vives did not file a responsive pleading. See Fla. R. Civ. P. 1.100(a) (“Pleadings. There shall be a complaint or, when so designated by statute or rule, a petition, and an answer to it....”); Fla. R. Civ. P. 1.140(a)(1) (“Unless a different time is prescribed in a statute of Florida, a defendant shall serve an answer within 20 days after service of original process and initial pleading on the defendant....”). Although Wells Fargo did not file a motion for default, it filed a motion for summary final judgment of foreclosure on May 28, 2009, and the service list indicates the motion was mailed to Ms. Vives.[1]
On April 9, 2010, more than a year after Wells Fargo initiated the foreclosure action, it filed a copy of a letter Ms. Vives wrote on April 3, 2009, to her mortgage servicing agent’s attorney, Kahane & Associates, P.A., which Wells Fargo claimed was Ms. Vives “Pro Se Answer.” The letter provides, in pertinent part, as follows:
I have been in contact with my mortgage lender and will be using a Repayment Plan in order to avoid foreclosure.
I appreciate any further information you can provide as any other steps that I need to take, including forwarding this to the courts as I had only a few days left to respond to them....
Again, I am going to work with my lender using the Repayment Plan they offered me in order to stop this foreclosure process.
After Kahane & Associates took it upon itself to file Ms. Vives’ “Pro Se Answer,” Wells Fargo filed other items, including the original promissory note and mortgage executed by Ms. Vives, an original assignment of mortgage, and two original allong-es.
On December 2, 2010, Judge Jennifer D. Bailey heard Wells Fargo’s Motion for Summary Final Judgment of Foreclosure, which Ms. Vives did not attend. On that same day, Judge Bailey entered a Final Judgment of Foreclosure in favor of Wells Fargo, finding that “[s]ervice of process has been duly and regularly obtained over” Ms. Vives, and setting the sale of the property for January 21, 2011. A copy of the final judgment was mailed to Ms. Vives.
Three days before the scheduled foreclosure sale, Ms. Vives filed an emergency motion to cancel the foreclosure sale. This was Ms. Vives’ first appearance in the foreclosure action. Senior Judge Gillman entered an order rescheduling the sale to March 3, 2011, due to “service of process questions.”
On March 1, 2011, Ms. Vives filed a Motion to Vacate Final Judgment and Cancel Sale, pursuant to Florida Rule of Civil Procedure 1.540(b), attaching her sworn affidavit. The motion to vacate asserts, in part, that Ms. Vives was never served with the complaint, and, therefore, the trial court did not have personal jurisdiction over her when the final summary judgment in favor of Well's Fargo was entered on December 2, 2010. In support of this assertion, the motion to vacate provides that the process server averred in his verified return of service that the unnamed person who was served is a brown- *12 haired female who is thirty-five to forty-nine years old, 5'4" to 5'8" tall, and weighs between 100 to 129 pounds, and that this description is not of Ms. Vives who is thirty-one years old, 5'6" tall, weighs 175 pounds, and, at the time of service, had blonde hair.
In addition to averring that she was not served with process, Ms. Vives stated that she first learned of the foreclosure action on December 22, 2010, when her uncle saw her home on a foreclosure sales list. Although the record demonstrates that numerous items filed by Wells Fargo were mailed to Ms. Vives, she claimed that she “never received any notices or pleadings regarding this lawsuit” and “had no knowledge that a judgment was entered.”
In her affidavit, Ms. Vives described the circumstances relating to the letter she wrote to Kahane & Associates on April 3, 2009. In April 2009, her mortgage servicing agent, American Home Mortgage Servicing (“AHM”), contacted her and offered her a repayment plan to avoid foreclosure. Ms. Vives accepted the plan, and as requested by AHM, she contacted AHM’s attorney, Kahane & Associates. She spoke with an employee at Kahane & Associates who requested that she write a letter indicating that she had accepted the repayment plan. This employee assured her the letter “would stop the law firm from filing foreclosure” against her. During her conversations with AHM and Ka-hane & Associates, Ms. Vives claims she was not told that Wells Fargo had already filed a foreclosure action against her. As part of the repayment plan, from June to December 2009, Ms. Vives made payments to AHM, totaling $13,760. However, in December 2009, a $2500 payment was returned to Ms. Vives without an explanation.
Senior Judge Silver rescheduled the March 3, 2011, foreclosure sale to May 2, 2011. Thereafter, on March 25, 2011, Ms. Vives filed an Amended Motion to Vacate Final Judgment and Motion to Cancel Sale, which is substantively similar to the previously filed motion to vacate.
The hearing on the amended motion to vacate was scheduled for April 21, 2011, before Judge Donner. When Judge Donner cancelled her calendar for that day, Ms. Vives’ counsel re-noticed the hearing for April 28, 2011. Ms. Vives’ counsel appeared at the April 28th hearing, but was notified that the motion was not placed on the calendar because the notice of hearing was not provided at least seven business days prior to the hearing, as required by Judge Donner. Ms. Vives’ counsel re-noticed the hearing on the amended motion to vacate for May 12, 2011.
On April 29, 2011, Ms. Vives filed an emergency motion to cancel the May 2, 2011, sale, explaining that the amended motion to vacate would not be heard by Judge Donner until May 12, 2011. At the hearing on the emergency motion to cancel the sale, Judge Gillman, the presiding judge of the Foreclosure Master Calendar Court, questioned defense counsel as to when Ms. Vives first requested that the final judgment be vacated. In response, Ms. Vives’ counsel handed Judge Gillman the February 28, 2011, motion to vacate, and explained that the delay in filing the motion to vacate was due, in part, to the confusion as to which trial judge would be hearing the motion — the trial judge who entered the final judgment (Judge Bailey) or a trial judge in the division in which the foreclosure case was assigned. Thereafter, Judge Gillman signed a form order denying the emergency motion to cancel the sale and an order prepared by Wells Fargo’s counsel denying Ms. Vives motion to vacate the judgment.
On May 2, 2011, the subject property was sold to Wells Fargo; on May 6, 2011, *13 Ms. Vives filed an Objection to Sale; and on May 12, 2011, at the hearing scheduled before Judge Donner, Ms. Vives’ counsel learned that Judge Gillman had executed an order denying Ms. Vives’ motion to vacate.[2] Ms. Vives timely appeals Judge Gillman’s orders denying her motion to cancel the sale and motion to vacate.
Ms. Vives contends the trial court erred by denying her motion to vacate the final summary judgment of foreclosure as she was not served with process, and, therefore, the trial court did not have personal jurisdiction over her when the final summary judgment was entered. Wells Fargo, however, contends Ms. Vives waived any objection she may have had as to service by answering the complaint without raising this defense. See Fla. R.C.P. 1.140(h); Lennar Homes, Inc. v. Gabb Constr. Seros., Inc., 654 So.2d 649, 651 (Fla. 3d DCA 1995) (“A defendant who fails to contest the sufficiency of service of process at the inception of the case, whether by motion or responsive pleading, has waived this defense once he or she has entered a general appearance.”).
In support of this claim, Wells Fargo relies on Ms. Vives’ letter that Wells Fargo filed with the trial court as her “Pro Se Answer.” This Court, however, has rejected a similar filing and argument in Opella v. Bayview Loan Servicing, LLC, 48 So.3d 185, 187 (Fla. 3d DCA 2010), concluding that the letter allegedly written by Mr. Opella, but filed by Bayview Loan Servicing as Mr. Opella’s “pro se answer,” did not constitute an answer.
In Opella, Bayview filed a foreclosure suit against Mr. Opella. Bayview moved for summary judgment against Mr. Opella, alleging that service of process properly had been effected on Mr. Opella. Approximately one month later, Bayview, without Mr. Opella’s authorization, filed a “Notice of Filing Defendant’s Pro Se Answer,” attaching an undated letter that Mr. Opella allegedly wrote to Bayview’s attorney in an attempt to settle a dispute as to the subject mortgage. Thereafter, the trial court entered final summary judgment in favor of Bayview, finding that service of process had been duly and regularly obtained over Mr. Opella. Mr. Opella appealed the entry of the final summary judgment.
On appeal, Bayview argued that Mr. Opella waived any sufficiency of service of process defense because he failed to raise the argument in his “pro se answer.” This Court rejected Bayview’s argument:
[T]he purported “answer” filed by Brian L. Rosaler, Bayview’s attorney, is nothing more than an undated letter to counsel for one of the litigants. This document does not remotely resemble an answer which under Florida Rule of Civil Procedure 1.100(c) must “have a caption containing the name of the court, the file number, the name of the first party on each side with an appropriate indication of other parties, and a designation identifying the party filing it and *14 its nature or the nature of the order, as the case may be.” It also does not indicate the subject matter of the paper, other than to state in its body that it “is written in part for purposes of settlement and compromise ... [and] also serves as a demand letter.” In short, it does not purport to be and is not an answer; it certainly is not an answer which waives any defenses related to service of process.
Opella, 48 So.3d at 188.
As in Opella, the letter filed by Wells Fargo in the instant case: (1) does not contain any sort of caption; (2) clearly indicates it was written for a purpose other than answering the complaint — acceptance of a prepayment plan; and (3) does not authorize the mortgage holder or its attorney to file the letter as the defendant’s “pro se answer.”[3] Thus, the letter “certainly is not an answer which waives any defense related to service of process.”[4] Id.
Ms. Vives first appeared in this action when she filed an emergency motion to cancel the January 21, 2011, foreclosure sale. In moving to cancel the sale, Ms. Vives contested service of process, and, therefore, did not waive the defense of lack of service of process.
We also reject Wells Fargo’s assertions that, even if the defense of lack of service of process was not waived, the process server’s verified return of service was regular on its face and, therefore, service is presumed valid, and that Ms. Vives did not overcome that presumption of validity by clear and convincing evidence. As succinctly explained by this Court in Bennett v. Christiana Bank & Trust Co., 50 So.3d 43, 45 (Fla. 3d DCA 2010):
Strict construction of, and compliance with, statutes governing service of process is required. Shurman v. Atl. Mortgage & Inv. Corp., 795 So.2d 952, 954 (Fla.2001). Without proper service, a court may not proceed in the matter. Re-Employment Sens., Ltd. v. Nat’l Loan Acquisitions Co., 969 So.2d 467, 471 (Fla. 5th DCA 2007) (citing Henry P. Trawick, Jr., Florida Practice and Procedure § 8:20 (2007 ed.)). “A summons properly issued and served is the method by which a court acquires jurisdiction over a defendant.” Seymour v. Panchita Inv., Inc., 28 So.3d 194, 196 (Fla. 3d DCA 2010). In analyzing whether service is proper, the return of service is the point of departure.
A process server’s return which is regular on its face is presumed valid absent clear and convincing evidence to the contrary. Bank of Am. v. Bom-stein, 39 So.3d 500 (Fla. 4th DCA 2010); Telf Corp. v. Gomez, 671 So.2d 818, 818 (Fla. 3d DCA 1996). Moreover, a simple denial is insufficient to impeach the validity of service. Telf Corp.[, 671 So.2d at 818].
As instructed by Bennett, we begin by examining the process server’s verified re *15 turn of service to determine if it is regular on its face. The verified return of service reflects that on March 19, 2009, the process server delivered the summons and complaint to Ms. Vives’ usual place of abode, and in accordance with section 48.031(l)(a), left copies of the summons and complaint with an unnamed person who was over the age of fifteen, advising the person of the contents. The process server described the unnamed person as: “NOT MARRIED. NOT IN MILITARY. F. WHT, BROWN HAIR, 35^9 YRS, 5'4-5'8,100-129 LBS.”
Section 48.031(l)(a), Florida Statutes (2009), provides:
(l)(a) Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents. Minors who are or have been married shall be served as provided in this section.
(emphasis added). Section 48.21, Florida Statutes (2009), which is titled “Return of execution of process,” provides, in relevant part, as follows:
Return of execution of process. — Each person who effects service of process shall note on a return-of-service form attached thereto, the date and time when it comes to hand, the date and time when it is served, the manner of service, the name of the person on whom it was served.... A failure to state the foregoing facts invalidates the service, but the return is amendable to state the truth at any time on application to the court from which the process issued. On amendment, service is as effective as if the return had originally stated the omitted facts....
(emphasis added).
Thus, contrary to Wells Fargo’s assertion, the verified return of service is not regular on its face because it fails to satisfy the requirements set forth in sections 48.031(l)(a) and 48.21. The return of service does not state the name of the person on whom service was made, and it does not state that this unnamed person resides at Ms. Vives’ regular place of abode, as required by section 48.031(l)(a). See Robles-Martinez v. Diaz, Reus & Targ, LLP, 88 So.3d 177 (Fla. 3d DCA 2011) (“Service made under the substitute service provisions of section 48.031, Florida Statutes, must be strictly complied with, and these provisions are to be strictly construed.”).
Because the verified return of service is defective on its face, Ms. Vives was not required to present clear and convincing evidence to overcome the presumption of validity.[5] Instead, the burden shifted to Wells Fargo to prove valid service. See Re-Employment Servs., 969 So.2d at 471 (“If the return is regular on its face, then the service of process is presumed to be valid and the party challenging service has the burden of overcoming that presumption by clear and convincing evidence. However, if the return is defective on its face, it cannot be relied upon as evidence that the service of process was valid. When there is an error or omission in the return of service, personal jurisdiction is suspended and it ‘lies dormant’ until prop *16 er proof of valid service is submitted.”) (citations omitted); Gonzalez v. Totalbank, 472 So.2d 861, 864 n. 1 (Fla. 3d DCA 1985) (“When the return of service is regular on its face, the party challenging the service has the burden of overcoming the presumption of its validity by presenting clear and convincing evidence. On the other hand, when, as in this case, the challenging party makes a prima facie showing that the return is defective, then the burden shifts to the person acting under the substituted service provision to prove valid service.”) (citations omitted).
In conclusion, we find that: (1) the letter Ms. Vives wrote to the servicing agent’s attorney and filed by Wells Fargo one year later did not serve as an answer to the complaint; (2) Ms. Vives objected and claimed lack of personal jurisdiction in her first appearance before the trial court; and (8) the verified return of service, which did not allege personal service upon Ms. Vives, did not identify the person the complaint was allegedly served on, or state that the person resides at the premises, was not regular on its face. Thus, the burden shifts to Wells Fargo to demonstrate at an evidentiary hearing that service was valid. On remand, if the trial court determines that Wells Fargo fails to meet its burden, the order denying the motion to vacate the final judgment must be reversed, and the trial court must enter an order granting the motion to vacate the final summary judgment of foreclosure.
The remaining issues raised by Ms. Vives do not warrant discussion.
Remanded with instructions.
WELLS, C.J., concurs.

. The address on the service list for Ms. Vives is the address of the mortgaged property, and there is no indication in the record that Ms. Vives disputes that the mortgage property was her usual place of abode on March 19, 2009. In addition, Wells Fargo filed numerous items between May 28, 2009, and April 9, 2010, which also were mailed to Ms. Vives.

. On May 18, 2011, Ms. Vives' counsel filed a sworn affidavit averring, in part, that at the April 29, 2011, hearing, she handed Judge Gillman the motion to vacate solely to establish the date Ms. Vives filed her initial motion to vacate. Further, she believed that the sole issue before Judge Gillman was Ms. Vives' emergency motion to cancel the May 2, 2011, sale, as the amended motion to vacate was scheduled to be heard by Judge Donner on May 12, 2011. Following the April 29th hearing before Judge Gillman, Ms. Vives’ counsel and Wells Fargo’s counsel spoke about the scheduled hearing before Judge Donner, but Wells Fargo’s counsel did not indicate that an order denying Ms. Vives’ motion to vacate judgment would be prepared for Judge Gill-man’s signature. Further, Ms. Vives’ counsel asserted that she first learned that Judge Gill-man had signed an order denying the motion to vacate when she appeared at the May 12, 2011, hearing before Judge Donner.

. Wells Fargo argues that the portion of- Ms. Vives’ letter stating, "including forwarding this to the courts,” indicates that Ms. Vives authorized Wells Fargo to file her letter in the lower tribunal as her pro se answer. We disagree. In making this argument, Wells Fargo ignores the beginning of the sentence, which states: "I appreciate any further information you can provide as any other steps that I need to take, including forwarding this to the courts...." (emphasis added). Clearly, Ms. Vives was requesting information from Kahane & Associates as to what further steps she needed to take.

. Even if we had concluded that the verified return of service was regular on its face, based on the allegations set forth in the amended motion to vacate final summary judgment and Ms. Vives’ sworn affidavit, an evidentiary hearing would have been necessary to determine if Ms. Vives could overcome the presumption of validity with clear and convincing evidence.

. At the April 29th hearing on Ms. Vives’ emergency motion to cancel the sale scheduled for May 2, 2011, Judge Gillman recognized that "the letter is not an answer.”