# Illinois Official Reports

## Appellate Court

*Primus Financial Services v. Walters*, 2015 IL App (1st) 151054

| | |
|---|---|
| Appellate Court Caption | PRIMUS FINANCIAL SERVICES, Plaintiff-Appellee, v. JOHN WALTERS, Defendant-Appellant. |
| District & No. | First District, Third Division Docket No. 1-15-1054 |
| Filed | November 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00M1-129835; the Hon. James P. Pieczonka, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John Walters, of Lockport, appellant *pro se*. Bowman, Heintz, Boscia & Vician, LLC, of Chicago (Glenn S. Vician, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1        Jaguar Credit Corporation filed a breach of contract suit in 2000 against defendant John Walters alleging that Walters defaulted on an automobile lease agreement. When Walters failed to appear, the trial court entered a default judgment in favor of Jaguar. In 2013, Primus Financial Services, purportedly the new owner of the debt, filed a petition to revive the judgment pursuant to section 2-1602 of the Code of Civil Procedure (735 ILCS 5/2-1602 (West 2012)). Walters moved to vacate the 2000 default judgment because he was never properly served. The trial court vacated the default, and the case proceeded to a bench trial, after which the trial court entered judgment in favor of Primus. No trial transcript is included in the record. Walters appeals, arguing that (1) Primus failed to prove that it owned the debt at issue, (2) the action should have been dismissed due to plaintiffs' lack of due diligence in serving him, and (3) the doctrine of *laches* precludes recovery. Finding no error, we affirm.

¶ 2                                    BACKGROUND

¶ 3        Jaguar filed a breach of contract suit against Walters on June 20, 2000, seeking $17,307.42 in payments under an automobile lease agreement, plus costs. On July 27, 2000, the sheriff filed a certificate of service indicating that he served Walters' 15-year-old son (also named John Walters) at 524 South Street in Lockport, Illinois. The certificate noted that "[h]is [father] is in Ill Dept of Corrections."

¶ 4        On August 4, 2000, Walters sent a letter to the clerk of the circuit court from the federal penitentiary in Marion, Illinois. In the letter, Walters stated that he no longer resided at the Lockport house, because he was incarcerated. He acknowledged that the summons had been delivered to his son but stated that he had "the right of being personally served." He further stated that because he could not afford a lawyer, he would need to personally appear in court in order to defend himself, and he requested that the court pay the cost of transporting and escorting him to the courthouse. Walters' letter did not mention that the house was vacant or that his family no longer lived there. It is unclear whether the trial court was aware of Walters' letter, and the letter does not reflect that a copy was sent to Jaguar.

¶ 5        Jaguar moved for a default judgment, stating that Walters was served on July 27, 2000, but had not appeared in court or filed any response. The trial court granted the motion and entered a default judgment on October 4, 2000. Jaguar attempted to satisfy the judgment by garnishing Walters' wages at his last known place of employment, but the employer informed the court that Walters was no longer employed there.

¶ 6        On October 2, 2013, Primus filed a section 2-1602 motion to revive the judgment. *Id.* (allowing revival of a dormant judgment at any time within 20 years of its entry). Walters was personally served with a copy of the revival motion on October 22. Walters then filed a motion to quash service and vacate the default judgment that was entered against him in 2000. In that motion, he alleged that in 2000, he was incarcerated in federal prison and the Lockport house was vacant due to foreclosure. On July 27, 2000, Walters' son was playing basketball in the driveway of the vacant home. He observed the sheriff arrive with documents in his hand and knock on the door. Receiving no response, the sheriff asked Walters' son where his father was. Walters' son explained that his father was in prison and the house was empty. The sheriff then handed him the summons, stated "This is for your father," and left. These allegations were supported by affidavits from Walters and his son. Based upon these allegations, Walters

argued that he was never properly served, since service was not made at his residence and the sheriff was aware of that fact. He further argued that because Jaguar lacked diligence in attempting service at his actual residence in prison, the default judgment should be vacated with prejudice under Illinois Supreme Court Rule 103(b) (eff. July 1, 2007).

¶ 7 The trial court entered an order vacating the default judgment without prejudice and quashing service on the underlying complaint on May 7, 2014. On May 20, 2014, Walters was personally served with an alias summons. (By this time, Walters was apparently no longer in prison; he was served at a residential address.)

¶ 8 The case proceeded to a bench trial. No transcript or bystander's report of the trial is included in the record. Following trial, the court entered a judgment for Primus in the amount of $15,807.17 plus costs.

¶ 9                                    ANALYSIS

¶ 10 Walters argues that the trial court's judgment for Primus must be reversed for three reasons: (1) Primus failed to establish that it owned the debt at issue; (2) plaintiffs' lack of due diligence in obtaining service requires dismissal of the action; and (3) the doctrine of *laches* precludes recovery. We consider these arguments in turn.

¶ 11                          Primus' Ownership of the Debt

¶ 12 Walters does not dispute that he originally owed a debt to Jaguar, but he asserts that Primus never established that it received ownership of that debt. In this regard, he raises two arguments. First, he argues that Primus failed to plead that it owned the debt in its section 2-1602 motion to revive, so the trial court should have dismissed the suit without trial. Second, he argues that Primus failed to prove ownership of the debt at trial and was therefore not entitled to judgment.

¶ 13 Walters' first argument misses the mark because a section 2-1602 motion to revive a judgment is not a pleading. See *Burman v. Snyder*, 2014 IL App (1st) 130772, ¶ 11 ("Revival of a judgment is not an original suit but the continuation of a suit in which the judgment was entered."). Consequently, Walters' authority regarding statutory pleading requirements is inapposite. See 735 ILCS 5/2-403(a) (West 2012) (when an assignee of a chose in action brings suit, the assignee must set forth in its pleading how and when it acquired title); 735 ILCS 5/2-606 (West 2012) (if a claim is founded upon a written instrument, a copy of that instrument must be attached to the pleading); *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 742 (2011) (a collection agency can only bring suit to collect on a debtor's account if the agency pleads that it is an assignee of the original creditor as described in section 8b of the Collection Agency Act (225 ILCS 425/8b (West 2008))). Additionally, the Collection Agency Act referenced in *Unifund* only applies to collection agencies. Walters claims that Primus is "a well-known debt buyer," but he does not present any evidence of record to support this assertion. Accordingly, we will not consider this argument. See *People v. Mehlberg*, 249 Ill. App. 3d 499, 531 (1993) (reviewing court will not take judicial notice of evidentiary material not presented in the court below).

¶ 14 This is not to say that Primus did not have to prove ownership of Walters' debt. Rather, we find only that Primus' proof of ownership did not have to accompany its section 2-1602 motion; proof at trial would have sufficed. Primus asserts that it did present such proof at trial.

Walters denies this assertion. We have no way of determining this issue, since the record does not contain any trial transcript or bystander's report, nor does it contain copies of any exhibits that were presented at trial.

¶ 15 It is well established that the appellant has a duty to present the court with a proper record on appeal so that the court has an adequate basis for reviewing the decision below. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005). In the absence of a proper record, we must presume that the missing evidence supported the trial court's judgment and resolve any doubts against the appellant. *In re Marriage of Rogers*, 213 Ill. 2d 129, 140 n.2 (2004); *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 445-46 (2007). Thus, without a record of the trial proceedings, we must presume that the trial court correctly found that Primus had a legitimate claim to Walters' debt.

¶ 16                                   Due Diligence in Obtaining Service

¶ 17 Walters next argues that the complaint should have been dismissed under Rule 103(b), since Jaguar originally brought suit in 2000 but Walters was not properly served until 2014. Rule 103(b) provides: "If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice." Ill. S. Ct. R. 103(b) (eff. July 1, 2007). Whether to dismiss a suit under Rule 103(b) is a decision committed to the trial court's discretion (*Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990)), and the decision will not be disturbed on review unless that discretion has been abused. *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213 (2007).

¶ 18 Initially, we agree with Walters that the sheriff's attempt to serve him at the Lockport house on July 7, 2000, was not effective. Substitute service may be obtained "by leaving a copy [of the summons] *at the defendant's usual place of abode*, with some person of the family *** of the age of 13 years or upwards." (Emphasis added.) 735 ILCS 5/2-203 (West 2000). It is unclear whether Walters' incarceration alone would have served to change his usual place of abode.

¶ 19 The parties do not provide, nor has our research disclosed, any Illinois law directly dealing with this issue, and other jurisdictions are split on the matter. See, *e.g.*, *Shurman v. Atlantic Mortgage & Investment Corp.*, 795 So. 2d 952 (Fla. 2001) (inmate's usual place of abode for service of process was prison, not the home where inmate had lived with his wife); *Fidelity & Deposit Co. of Maryland v. Abagnale*, 234 A.2d 511, 519 (N.J. Super. Ct. Law Div. 1967) (defendant could not be reached by substitute service in New Jersey when he was incarcerated in Pennsylvania, since "one's 'dwelling house or usual place of abode' is limited in its meaning to the place where one is 'actually living' at the time when service is made"); but see, *e.g.*, *Blue Cross & Blue Shield of Michigan v. Chang*, 109 F.R.D. 669, 670 (E.D. Mich. 1986) (family residence continues to be the place of abode of an individual who has been incarcerated; relevant consideration is whether the individual intends to return to the place of service); *Bull v. Kistner*, 135 N.W.2d 545, 548 (Iowa 1965) (incarceration does not change the residence of a married individual whose family remains in the home he occupied at the time of his imprisonment). Thus, although Walters contends that Jaguar should have known that service was ineffective based solely on the notation on the return of service that Walters was incarcerated, he cites no binding precedent in support of this assertion.

¶ 20     But, as the court later found after the hearing on the motion to vacate, the Lockport house had been foreclosed upon, and Walters' wife and son no longer resided there. Therefore, regardless of the effect of Walters' incarceration, service at the Lockport house was not effective.

¶ 21     Consequently, Walters was not properly served until May 20, 2014, two weeks after the trial court granted his motion to vacate the default judgment against him. Walters does not argue that Primus was not diligent in effecting service after the default judgment was vacated but contends that the delay from July 27, 2000 (when the complaint and summons were left with Walters' son) to May 2014 constitutes the relevant period for purposes of determining due diligence. The parties do not dispute that this service occurred after the applicable statute of limitations had expired. See 810 ILCS 5/2A-506 (West 2012) (four-year statute of limitations in action for default under a lease contract). Thus, the question becomes whether the record reflects diligence on the part of Jaguar in attempting to effect service on Walters.

¶ 22     Rule 103(b) does not dictate a specific time within which a defendant must be served. *Segal*, 136 Ill. 2d at 285. Rather, trial courts are given broad discretion to determine whether a plaintiff has exercised reasonable diligence. *Id.* at 285-86. Once a defendant has made a *prima facie* showing of a lack of reasonable diligence, the burden shifts to the plaintiff to demonstrate that reasonable diligence was exercised and that any delay in effecting service was justified. *Kole v. Brubaker*, 325 Ill. App. 3d 944, 949-50 (2001). In determining whether a plaintiff has exercised reasonable diligence, courts consider the following factors: (1) the length of time it took to serve defendant; (2) plaintiff's efforts to effect service; (3) whether plaintiff knew the defendant's residence; (4) whether knowledge of defendant's residence could have been easily obtained; (5) whether defendant was actually aware of the action; (6) any special circumstances; and (7) whether defendant was actually served. *Segal*, 136 Ill. 2d at 287.

¶ 23     Walters argues that the 14-year gap between filing and service in this case is certainly enough to shift the burden to Primus to demonstrate reasonable diligence. See *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 19 (delay of five months between filing and service is sufficient to shift the burden). Primus disagrees, contending that the period during which the default judgment was in place should not be included in calculating the length of the delay in service, since Jaguar, and later Primus, were entitled to rely on the judgment. Subtracting the time that the default judgment was in effect leaves only 2½ months between filing and service–not long enough to show a lack of reasonable diligence. See, *e.g.*, *Segal*, 136 Ill. 2d at 289 (trial court abused its discretion by granting Rule 103(b) dismissal based upon 4½-month delay).

¶ 24     We agree with Primus. Walters has not presented any authority to support his contention that time after judgment can be included in the Rule 103(b) calculation. Nor would such a rule make any sense. Even the most diligent plaintiff would have no reason to attempt service on a defendant while a judgment was in place.

¶ 25     Walters argues that Primus should not be able to rely on the judgment, since Jaguar only obtained that judgment by intentionally misrepresenting to the trial court that he had been properly served. He states that it is obvious on the face of the sheriff's certificate of service that service was not proper since the certificate stated that he was in the Illinois Department of Corrections. But, as noted above, the law regarding a prisoner's usual place of abode is not clear; some jurisdictions consider a prisoner's family residence to be a proper place of service

(*Chang*, 109 F.R.D. at 670; *Bull*, 135 N.W.2d at 548) and no Illinois authority holds to the contrary. And although Walters faults Jaguar for not informing the court that the house was vacant, he points to nothing in the record that would have alerted Jaguar to that fact, particularly given that (1) Walters' son was playing basketball in the home's driveway when the complaint and summons were left with him and (2) the sheriff's return mentions nothing about the house being vacant. Moreover, in the absence of any evidence to the contrary, we will assume that the trial court reviewed the certificate of service prior to entering judgment and detected no impropriety in service. See *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005) ("Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law."). Thus, we find that plaintiffs were entitled to rely on the trial court's judgment, and Walters has not made a *prima facie* showing of a lack of reasonable diligence.

¶ 26 We note that, even if Walters had made a *prima facie* showing, the *Segal* factors do not necessarily line up in his favor. First, the record suggests that Jaguar did not know where Walters could be served in 2000. Although the sheriff's certificate of service stated that Walters was in the Illinois Department of Corrections, this was incorrect; Walters was actually incarcerated in federal prison. Any attempt to serve Walters in the Illinois Department of Corrections would have been futile. Additionally, Walters had actual knowledge of the lawsuit. His letter to the trial court shows that he received a copy of the summons within eight days of the sheriff's attempt to serve him at the Lockport house, and two months before default was entered against him. Consequently, Walters was not prejudiced by the lack of proper service. See *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377 (1990) (although lack of prejudice to the defendant is not the sole factor to be considered under Rule 103(b), it is "significant" in the court's analysis).

¶ 27 Thus, the trial court's decision to vacate the default judgment without prejudice and allow the case to proceed to trial on the merits was reasonable and not an abuse of discretion. *Case*, 227 Ill. 2d at 213 (Rule 103(b) dismissal rests within the sound discretion of the trial court).

¶ 28                                              *Laches*

¶ 29 Finally, Walters argues that the doctrine of *laches* precludes recovery since he was not properly served until after the period of limitations had ended. We disagree.

¶ 30 *Laches* is an equitable defense that can be asserted against a party who has knowingly slept upon its rights and failed to assert them in a timely manner. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 270 (2001); *La Salle National Bank v. Dubin Residential Communities Corp.*, 337 Ill. App. 3d 345, 351 (2003). Essentially, the doctrine of *laches* is the equitable counterpart to defenses based on the statute of limitations; that is, statutes of limitations generally apply to actions at law, while the doctrine of *laches* generally applies to actions in equity. *Sundance Homes*, 195 Ill. 2d at 270.

¶ 31 The doctrine of *laches* does not apply to this case because plaintiffs' claim is not one that would warrant equitable relief. Equitable remedies, such as specific performance, are only available where legal remedies (*i.e.*, the "mere payment of money") will not provide sufficient relief. *Stevens v. Protectoseal Co.*, 27 Ill. App. 3d 724, 730 (1975). In this case, Jaguar only sought the payment of money in its complaint; therefore, this is an action at law and *laches* is inapplicable.

¶ 32    Furthermore, even if *laches* could apply to actions at law, it is based upon the timeliness of filing the complaint, not upon the timeliness of service. Indeed, in determining the applicability of *laches*, one relevant concern is whether plaintiff "had notice or knowledge of defendant's conduct and the opportunity to *institute a suit*." (Emphasis added and internal quotation marks omitted.) *La Salle*, 337 Ill. App. 3d at 351 (quoting *Slatin's Properties, Inc. v. Hassler*, 53 Ill. 2d 325, 330 (1972)). Walters does not dispute that Jaguar instituted the suit in a timely fashion in 2000. His sole grievance is that he was not properly served until 2014. Situations like these–where the complaint is timely filed but the defendant is not served until after the statute of limitations has expired–are not governed by the doctrine of *laches* but by Rule 103(b). Ill. S. Ct. R. 103(b) (eff. July 1, 2007). For the reasons discussed above, Rule 103(b) does not require the dismissal of Primus' suit.

¶ 33                                    CONCLUSION

¶ 34    Without a trial transcript, we cannot consider Walters' argument that Primus failed to prove ownership of his debt at trial. Additionally, the trial court was not required to dismiss Primus' suit under either Rule 103(b) or the doctrine of *laches*. Thus, the judgment of the trial court for Primus is affirmed.

¶ 35    Affirmed.