DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

NAVAS BAR & GRILL, INC., d/b/a 1701 RESTAURANT & LOUNGE,

Appellant,

v.

JENETH TAPIAS,

Appellee.

No. 2D2024-2756

_____

October 15, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Hillsborough County; Melissa Mary Polo, Judge.

Victor L. Zamora, Jr., of Viza Law, and Caryna Fuller of Caryna M. Fuller,
Esq. PLLC Tampa, for Appellant.

Jessica Gonzalez-Monge, of Rubenstein Law, P.A., and Andrew A. Harris,
of Harris Appeals, P.A., for Appellee.


KELLY, Judge.

        Originally, we intended to dispose of this case with a per curiam

affirmance citing *KMG Properties, LLC v. Owl Construction, LLC*, 393 So.

3d 240 (Fla. 2d DCA 2024).[1]  Given the dissent, we write briefly for the

_____

        [1] The dissent dismisses *KMG*, "considering the holding/dicta
distinction in *Pedroza v. State*, 291 So. 3d 541 (Fla. 2020)," but it does
not identify what dicta in *KMG* it believes we are mistakenly relying on.
It then explains how the "facts, circumstances and arguments" in this

benefit of the parties, who may be perplexed if we do not detail our reasoning for affirming the trial court.

As *KMG* explains, section 48.21(1), Florida Statutes (2023), defines a valid return of service. *See KMG,* 393 So. 3d at 245-46 (quoting *Koster v. Sullivan,* 160 So. 3d 385, 388 (Fla. 2015)). To be valid a return of service must include these facts:

> (1) the date and time that the pleading comes to hand or is received by the process server, (2) the date and time that process is served, (3) the manner of service, and (4) the name of the person served and, if the person is served in a representative capacity, the position occupied by the person.

*Koster*, 160 So. 3d at 389. The return here had the requisite dates and times, said the manner of service was "corporate," and that it was served on "Georgia as manager . . . authorized to accept service for Diana Molina Registered Agent." Because the return had all the facts required by section 48.21(1), the trial court correctly concluded that the return of service was regular on its face.

Part II of the dissent, however, posits that the return of service was not regular on its face because "the process server omitted the last name of the person served." But whether the omission of Georgia's last name renders the return irregular is not before us. Navas did not make this

---

case differ from *KMG,* so it appears that what the dissent is trying to say is that it believes *KMG* is distinguishable, not that we have relied on dicta. The dissent also says that the "core issue" in *KMG* was the veracity of the return—not its facial validity. This ignores Part I of the opinion which is devoted to the facial validity of the return. Part I explains that the "verified return of service is the whole ball of wax before us," and it notes how the trial court's conclusion that it was irregular on its face "infected" its "downstream findings" because it caused the trial court to put the burden of proof on the wrong party. *KMG*, 393 So. 3d at 245.

argument in the trial court, and it is not argued in its brief.[2] Therefore, it cannot provide a basis to reverse the trial court. "Our precedent requires that an argument for reversal be specifically preserved in the trial court and then be specifically raised and briefed to the appellate court in order for that appellate court or a higher appellate court to consider it." *D.H. v. Adept Cmty. Servs., Inc.,* 271 So. 3d 870, 888 (Fla. 2018) (Canady, C.J., dissenting); *see also Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below."); *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy."). "[I]t is not the function of the Court to rebrief an appeal." *Polyglycoat Corp.*, 442 So. 2d at 960.

The arguments Navas has presented fail because Navas relies on the wrong statutory provisions to challenge the manner of service. It chiefly argues that the return was irregular because it did not "show the absence of all officers of a superior class designated in the statute before resort is had to service upon an officer or agent of an inferior class" as

---

[2] Even if we were to consider it, we are not persuaded that the omission of Georgia's last name makes this case more like a "Jane Doe" case, which is no name at all, than a case in which there is an error or omission in the name provided. At any rate, Navas never argued the return was irregular because it did not include the last name of the person served, nor did it make *any other* argument that the return did not satisfy the requirements of section 48.21(1). Further, an error in the name goes to "the veracity of the information in the return of service and should be raised once the burden has shifted." *Gibson v. Star Collision & Towing, LLC,* 381 So. 3d 690, 693 (Fla. 2d DCA 2024).

specified in section 48.081(3).[3]  Section 48.081(3) applies only if "service cannot be made on a registered agent."  Here, service *was* made on the corporation's registered agent—as authorized by section 48.081(2)—by serving a representative of the corporation's designated registered agent. Hence, there was no need to resort to the manner of service specified in 48.081(3).  As this court explained in *KMG,* "[s]ection 48.091 tells us how to serve [corporations]" and section 48.091(3) provides for service on an individual who is a representative of the designated registered agent. *KMG,* 393 So. 3d at 246.  The trial court, citing section 48.091(3), correctly recognized that service on a representative of the registered agent was proper.

While relying primarily on its argument that service was defective under section 48.081(3), Navas makes passing reference to section 48.091(4), which provides that in the absence of a registered agent who is a natural person, process can be served on an employee of the registered agent.  Navas argues Georgia was not an employee of the registered agent.  In *KMG* we explained that unlike section 48.091(4), section 48.091(3) does not require that the registered agent employ the individual who acts as the representative.  *KMG,* 393 So. 3d at 246.

---

[3] We take no position on whether this information had to be shown on the return for it to be considered regular on its face.  In *Koster,* the supreme court held that the question of the facial validity of a return of service begins and ends with whether the return meets the requirements of section 48.21(1).  *See Koster,* 160 So. 3d at 389-91 (holding that for a return of service to be regular on its face it need not list the factors defining the manner of service—all that is required is that it satisfy the requirements of section 48.21).  *Koster* considered what information had to be included if process was served under section 48.031(1)(a).  How *Koster's* reasoning would apply to service under other statutes defining the manner of service remains to be seen.

The other problem with this argument is that Navas offered no evidence about Georgia's employment status—or anything else. Navas' failure to understand that the return was regular on its face "had a cascading effect" here as it did in *KMG*. There, the trial court's failure to recognize that the return was regular on its face caused it to shift the burden to KMG to prove service was proper when instead the burden should have been on Owl, the defendant, to prove by clear and convincing evidence it was not. *KMG*, 393 So. 3d at 245-46. On appeal, we found that the return was regular on its face; that Owl, not KMG, had the burden of proof; and that Owl had not met its burden. *Id.* Similarly, Navas, believing its arguments addressing the manner of service defeated the facial regularity of the return, did not understand that it had the burden to prove—with clear and convincing evidence—that service was not proper. It offered no evidence whatsoever instead relying on counsel's arguments to challenge the manner of service. The trial court here correctly recognized that Navas had the burden to show, with evidence, that service was not proper.

The trial court correctly found the return was regular on its face because it recited all the facts required by section 48.21(1) and therefore service was presumed valid. It also correctly recognized that under section 48.091(3) service on the representative of the corporation's designated registered agent was proper. Finally, it correctly placed the burden of proof on Navas to come forward with evidence to support its arguments about Georgia's status, something Navas did not do. For these reasons we conclude the trial court correctly denied Navas' motion to set aside the default for insufficient service of process.

Affirmed.

5

NORTHCUTT, J., Concurs.
MOE, J., Dissents with opinion.

MOE, Judge, Dissenting.

After Janeth Tapias filed this premises liability suit against Navas Bar & Grill, Inc. d/b/a 1701 Restaurant & Lounge ("Navas"), a process server came to the registered address for Navas's registered agent. The registered agent is an individual named Diana Molina, and when the process server arrived at Ms. Molina's address, she found someone named "Georgia" there. The process server handed "Georgia" the summons and the complaint and then supplied a return of service that purported to name the person served as "Georgia as manager of 1701 Restaurant & Lounge Authorized to accept Service for Diana Molina Registered Agent of Navas Bar & Grill."

Mysteries about "Georgia" abound. One of the many things nobody knows about "Georgia" is what "Georgia" did with the summons and the complaint. We do know that Navas did not respond to the suit and a default was entered against the company.

A jury trial was held and Navas did not participate. The jury awarded Ms. Tapias $1.6 million. When judgment collection efforts began, Navas moved to set aside the default judgment. After a hearing, the trial judge denied the motion. Navas appealed.

I.

A trial court's jurisdiction over a defendant is not perfected until the defendant is properly served. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). Without proper service, the trial court is without jurisdiction to enter a judgment against that defendant and any judgment that is entered against that defendant is void. *Ardt v. Am.'s Senior Fin. Servs., Inc.*, 885 So. 2d 918, 919 (Fla. 4th DCA 2004).

6

Given the jurisdictional role that service of process plays, as a matter of law whether or not the defendant had some notice of the suit is not the question. *Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co.,* 84 U.S. 97, 104 (1987).

When a defendant challenges the propriety of service, the court engages in a two-step inquiry. The return of service is central in both steps. *Gibson v. Star Collision & Towing, LLC,* 381 So. 3d 690, 692–93 (Fla. 2d DCA 2024) (recognizing that the return of service is the instrument upon which we rely "to determine whether jurisdiction over an individual has been established").

In step one, the question before the court is the facial validity of the return. *Id.* The court must consider whether the return is "regular on its face," meaning whether the process server's averments on the return show that the process server complied with applicable law. § 48.21, Florida Statutes (2019) (providing that failure to state the required facts on the return for service form invalidates the service). At this stage, the party seeking to invoke the court's jurisdiction has the burden of proof. *Gibson,* 381 So. 3d at 693. If the party seeking to invoke the court's jurisdiction meets its burden, then the inquiry moves to step two.

In step two, having determined that the return of service is regular on its face—meaning, it reflects compliance with applicable law—the court presumes that service was proper. *Id.* At this stage, the burden shifts to the party challenging service. *Id.* The party challenging service must prove by clear and convincing evidence that the process server's averments in the return were inaccurate or untrue as a matter of fact. *Id.*

If the party seeking to invoke the court's jurisdiction fails at step one, then that party must prove valid service by other means. *Id.* A

7

failure at step one renders the step two inquiry unnecessary, which means that the party challenging service has no obligation to present evidence. "[B]ecause of the importance of litigants receiving notice of actions against them, statutes governing service of process are to be strictly construed and enforced." *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 954 (Fla. 2001).

II.

For at least two reasons, Ms. Tapias did not carry her burden to establish facial validity. Most obviously, the return was not regular on its face because the process server omitted the last name of the person served. Section 48.21(1), Florida Statutes (2022) requires a return of service to identify "the name of the person on whom [process] was served."

The name of the person served is no minor detail. "A failure to state the facts . . . required by subsection (1) invalidates the service." § 48.21(2). In legal documentation, a person is named with at least a first and last name. Dating at least as far back as ancient Greece and Rome, the need to ensure accurate documentation in legal matters is a reason people are given both first and last names. *When Did People Start Using Last Names*, History Facts, https://historyfacts.com/arts-culture/article/when-did-people-start-using-last-names/ (last visited Jul. 21, 2025) (chronicling use of first and last names throughout world history for "[a]ccurate and consistent documentation" in "property transactions, tax collection, and other legal matters").

While we have made clear that a return of service is not rendered facially invalid because of a mere misspelling, we have acknowledged that a return of service is invalid if it fails to include the name of the

8

person served. *Gibson*, 381 So. 3d at 693. There is common sense behind this.

In *Gibson*, the process server served a man named William Klee, who was in fact the registered agent for the defendant. *Id*. at 692. When service was challenged, Mr. Klee filed an affidavit. *Id*. In that affidavit, Mr. Klee swore that he was authorized to accept service but he denied being present on the date of service. *Id*. He pointed out that the process server misspelled his last name, purporting to serve "William Kleet," not "William Klee." *Id*.

At an evidentiary hearing, the process server testified that the Mr. Klee who was physically present in the courtroom was the person identified on the return of service as "Mr. Kleet." *Id*. The trial court granted the defendant's motion to vacate service, reasoning that the proof of service was invalid because it misspelled Mr. Klee's name. *Id*. We reversed, noting that the misspelling of Mr. Klee's name went to the veracity of the information in the return of service, not the facial validity of the return itself. *Id*. at 693. There were logical reasons why we were reluctant to invalidate service based on what was obviously a spelling error or typographical mistake. There, the process server knew who he served and the step two inquiry confirmed that, as a matter of fact, even though the name was misspelled on the return the person served was the registered agent.

Unlike *Gibson*, in this case the trial court did not have before it the information necessary to get past step one of the analysis. On the face of the return, the process server did not demonstrate compliance with the applicable statutes, beginning with a failure to provide "Georgia's" last name, which injected fair doubt about who "Georgia" was. Additionally,

9

the process server did not include averments that would allow the court to determine that Navas could be served by serving "Georgia."

This case is more analogous to *Carus v. Cove at Isles at Bayshore Homeowners Ass'n,* 354 So. 3d 1111, 1114 (Fla. 3d DCA 2022). In *Carus,* a defendant named Tamara Carus disputed the propriety of substitute service purportedly made on "Jane Doe as sister/co-tenant" at Ms. Carus's address. *Id.* at 1113.

Ms. Carus argued that the return was not regular on its face because it failed to name the person served. *Id.* Secondarily, she argued that service was improper because it was not made at her usual place of abode. *Id.* The Third District agreed. It held that even though the return contained enough data that someone could arguably draw inferences to figure out the identity of the person served—namely, that the person served was served "as sister/co-tenant"—facial validity requires that the face of the return provide the name. *Id.* The court recognized that statutes governing service of process "are to be strictly construed and enforced," and held that the return was not regular on its face because it failed to name the person served. *Id.*

Here, in the inferences it drew at the facial validity stage, the trial court did what *Carus* instructed trial courts not to do. This is evident in the court's treatment of a concession by Navas about a waitress named Georgette. As part of its argument, Navas pointed out that it employed no one named "Georgia." Navas did, though, concede that it employed a waitress named Georgette. Though the trial court's written order mistakenly says otherwise, a review of both the motion and the hearing transcript reflects that Navas never conceded that Georgette the waitress was the person served. Instead, Navas argued in its motion that "*if,* in fact, 'Georgette' was the person served in this matter," then she never

10

provided Navas with the documents. From this, the trial judge decided that Georgette was "Georgia" and Georgette was served.

Consider what this means. In drawing these inferences, the trial judge took a concession not material to facial validity and, during the facial validity stage, used that concession to draw a factual inference in favor of the party who had the burden of establishing facial validity. Indeed, at the facial validity stage when the focus should have been solely on the face of the return and whether it alleged compliance with the applicable statutes, the trial judge took the argument of Navas's counsel and used that argument against Navas and it drew inferences upon inferences to benefit Ms. Tapias. Many of these inferences in favor of Ms. Tapias were contrary to what the face of the return averred. For example, the court's order inferred that "Georgia" was a woman, when the face of the return avers in its description of "Georgia" that "Georgia" is a "W/M" (white male). The court also inferred that Georgette was "Georgia," when the return makes no reference to the name Georgette. The court inferred that "at the time service was attempted, a 'waitress' named 'Georgette' was employed by [Navas]—but [] she no longer works for Defendant and did not pass along the process given to her," when the face of the return says nothing about Georgette and Navas did not concede that Georgette was served. The court inferred that Georgette was present on the day and at the time that service on "Georgia" was made. It inferred that a person named "Georgia" was not served by mistake, if Georgette was around. And then the court inaccurately stated in its order that Navas itself "speculated" that Georgette was likely "Georgia" and the person who was served. Meanwhile, averments in the proof of service supported an opposing inference: that Georgette was not "Georgia." After all, the return of

11

service reflects that the person served was a white male (not a female), a manager (not a waitress), and had a different first name (not Georgette). Ultimately, the trial judge failed to apply the correct legal burden to Ms. Tapias and then placed a thumb on the scale in favor of Ms. Tapias. It was Ms. Tapias's process server who averred that she served "Georgia." It was Ms. Tapias's process server who omitted "Georgia's" last name. It was Ms. Tapias's process server who averred that "Georgia" was a manager.

Adding another troubling factor into this equation, the description of "Georgia" provided on the return was so imprecise that it calls into question the accuracy of everything else on the face of the return. According to the proof of service, "Mr/Mrs Georgia F is a W/M, 30's, 5'5", 190 lbs, Black Hair with/No Glasses." The reader is left wondering whether Georgia-with-no-last-name is a man or a woman! The fact that "Georgia" has no last name and we cannot tell if "Georgia" was wearing glasses or not suddenly seems insignificant, if even Georgia's gender is up in the air. Amidst this backdrop, it becomes very concerning that, unlike in *Gibson*, nobody has been able to find "Georgia."

A proof of service that fails to identify the person served by first and last name is not facially valid. In this case, this failure was amplified by all the indicia of unreliability in the description of "Georgia." The failure to include a last name for "Georgia," coupled with the ambiguous phrasing and typographical errors in the description of "Georgia," meant that in order to successfully prevail in step two of the analysis, Navas would have been required to prove that an unidentified person was not served. Looking at it this way, it is even clearer that the return was invalid on its face.

12

III.

The facial invalidity problem did not end there. It is so easy to identify all that we do not know about "Georgia" that one could overlook what we *do* know. What we *do* know is that, under Chapter 48, "Georgia" was not someone through whom Navas could be properly served. So even setting aside its failure to satisfy the requirement that the person served be named, on its face the return did not aver that service was made on a person on whom service legally could be made.

Navas is a domestic corporation. Chapter 48 specifies how service must be made on a domestic corporation. Section 48.081(2) states that "[a] domestic corporation or registered foreign corporation may be served with process . . . by service on its registered agent." § 48.081(2). A registered agent can be either "[a]n individual" or "[a]nother domestic entity" under section 607.0501, Florida Statutes (2022). Navas designated an individual and her name is Diana Molina. At least "one good faith attempt" to serve Diana Molina was required before Ms. Tapias could move to the next option for effecting service on Navas. § 48.081(3)(a). And, even then, before moving on to attempt service on anyone but the registered agent, the process server's inability to serve Ms. Molina must be attributable to a failure on Ms. Molina's part to comply with Chapter 48.

This means that Navas could only be served in accordance with section 48.081(3)(a) if Ms. Molina could not be served (1) after one good faith attempt and (2) due to her failure to comply with the requirements of Chapter 48. § 48.081(3)(a). If those predicates had been established (and they were not established here), then Navas could have been served through only specific enumerated categories of people: "(a) The chair of the board of directors, the president, any vice president, the secretary, or

13

the treasurer of the domestic corporation or registered foreign corporation" or "(b) Any person listed publicly by the domestic corporation or registered foreign corporation on its latest annual report, as most recently amended." § 48.081(3)(a).

In *National Safety Associates, Inc. v. Allstate Ins. Co.*, 799 So. 2d 316 (Fla. 2d DCA 2001), we considered the facial validity of a return of service where it failed to aver that service was attempted on the individuals authorized to be served under an earlier version of section 48.081(1), Florida Statutes. The return of service reflected that the process server purportedly served the company through a low-level employee. *Id.* at 317. We noted that the statute did not provide for a low-level employee to be served without first endeavoring to serve the president of the company or another of the categories of higher-level employees specified in the statute. *Id.* Because the return reflected service on a low-level employee without an averment that the process server (1) first determined that the company's president was outside the jurisdiction and then (2) endeavored to serve the categories of higher-level employees specified in the statute, the return was invalid as irregular on its face. *Id.* at 318.

The reasoning from *National Safety Associates* applies here. Looking at the face of the return, there is no averment that the process server made a good faith attempt to serve Diana Molina herself. Nor is there any averment that the process server attempted to serve any of the categories of higher-level employees identified in the statute. Similarly, the averments of the return do not permit the conclusion that "Georgia" fell into any of the categories of the current version of section 48.081(3)(a). Further, the averments of the return do not support the

conclusion that Diana Molina could not be served "after one good faith attempt because of a failure to comply with [chapter 48]."

While the trial judge correctly noted that section 48.091(3) establishes certain requirements for a registered agent to maintain an office, it erred in its application of the statute. Where a domestic corporation designates a registered agent who is a natural person, section 48.091(3) requires that the registered agent maintain an office where the registered agent can be available to be served for at least two hours each day, five days a week. On those days and during those times, either the registered agent or an individual who represents the registered agent must be at that location during those times.

The trial judge concluded that service was proper because the process server was able to purportedly "make service" on "Georgia" at Ms. Molina's registered address at 11:20 a.m. But the fact that the process server walked into the registered address on a day and at a time that the registered agent must be available does not mean that service on "Georgia" was proper service. If anything, the fact that the process server gained entry on that day and at that time suggests that Ms. Molina complied with her obligations under Chapter 48.

The statute provides that if the registered agent is "temporarily absent" from the registered address on a day and at a time when the registered agent must be available, then service can be made on an employee of the registered agent. But the return does not aver that Ms. Molina was "temporarily absent" when the process server arrived. Even if she had been "temporarily absent," section 48.091(4) does not give a process server carte blanche to serve "Georgia as Manager of 1701 Restaurant & Lounge." Section 48.091(4) allows only service on *an*

15

*employee of the registered agent.* Whoever "Georgia" was, the process server attested that "Georgia" was an employee of Navas, not Ms. Molina. It was the process server's obligation to ensure compliance with section 48.081 and 48.091 and conduct further inquiry to ensure "Georgia" was authorized to receive service. *See Bank of Am., N.A. v. Bornstein*, 39 So. 3d 500, 504 (Fla. 4th DCA 2010) (holding service was invalid where the service was made on a lower-level employee who advised they were authorized to accept on behalf of the agent, but the process server failed to make any inquiry as to employee's authority to accept service under section 48.081). Nothing on the return of service indicates the process server conducted the necessary inquiry to determine whether Ms. Molina was available.

It was the burden of the party seeking to establish jurisdiction to show that the service was facially valid. Ms. Tapias failed to sustain that burden. Despite this, the trial court improperly shifted the burden to Navas to show, by record evidence, why service was improper. To me, this was clearly error as a matter of law.

IV.

I cannot agree with the majority's conclusion that our precedent in *KMG Properties, LLLC v. OWL Construction, LLC*, 393 So. 3d 240 (Fla. 2d DCA 2024), requires us to affirm. Considering the holding/dicta distinction in *Pedroza v. State*, 291 So. 3d 541 (Fla. 2020), the holding of *KMG Properties* does not necessarily even support affirmance here, much less require an affirmance. Under *Pedroza*, "[a] holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment." *Id.* at 547 (citing *State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005)). The facts, circumstances, and arguments

16

that are before us matter, and an examination of those facts, circumstances, and arguments reveals that KMG Properties was a "step two" case.

In *KMG Properties*, the process server supplied a detailed return of service. The question was whether the averments were correct. When the factual accuracy of the averments was challenged, an evidentiary hearing was held. The process server testified that he went to the registered agent's registered address and encountered a woman sitting at a desk at the entrance. 393 So. 3d at 243–44. The process server asked for the registered agent by name, identified himself as a process server, and informed the woman sitting at the desk that he was there to serve the registered agent. *Id.* The woman sitting at the desk held herself out as being authorized to accept service. *Id.* "Leery about leaving the legal papers" with the woman at the desk, the process server insisted that the woman "go back and clear that with [the registered agent], and she did." *Id.* The woman at the desk "came back and said she was authorized." *Id.*

When the registered agent testified, the registered agent's testimony contradicted the process server's account, but the registered agent's testimony was self-contradictory, too. *Id.* First, the registered agent "denied authorizing anyone to accept service on her behalf." *Id.* Then, the registered agent testified that "she could not remember telling [the woman at the desk] that she could accept service." *Id.* Later, the registered agent said she simply "didn't recall" the woman at the desk telling her that a process server was there. *Id.*

Unlike this case, in *KMG Properties* there was no question about the identity of the woman who was served. The process server correctly identified her by name on the return of service and the registered agent

17

knew who she was. *Id.* For the previous ten years, the woman had been a "1099-contractor" as a bookkeeper, receptionist, and appointment-setter. *Id.* The reason the registered agent provided for not securing an affidavit from the woman was that the woman was no longer working "here." *Id.*

Importantly, in *KMG Properties*, the process server did things that the process server in this case did not do. The process server in *KMG Properties* identified the person served by first and last name. *Id.* He took reasonable steps to determine that the woman he served had the authority to accept service. Specifically, before serving the woman at the desk, he asked that she go back and verify with the registered agent that the registered agent authorized her to accept service. *Id.* And in *KMG Properties*, it was undisputed that the registered agent was there on the day and at the time service was made. *Id.*

Although both cases involved disputes over proper service under the 2023 version of Chapter 48, *KMG Properties* relates to a different step in the process. The core issue in *KMG Properties* was the veracity of the return, not its facial validity. On the face of the return in that case, the process server alleged that the person he served went back and spoke with the registered agent and confirmed she was authorized to accept process. In this case, the return contains no such averment.

V.

The trial court also erred by concluding that any defects in service were cured by the fact that Navas had actual notice of the proceedings. In this, the court overlooked both the jurisdictional nature of service and precedent. *See Omni Cap. Int'l, Ltd.*, 484 U.S. at 104. A failure to properly serve Navas left the trial court without jurisdiction to enter the

18

judgment, and whether or not Navas at some point became aware of the proceedings was irrelevant to the jurisdictional inquiry.

## VI.

Examination of the return of service reveals that it was not regular on its face. The process server failed to comply with the statutory requirement that the person served be named, because naming someone in a legal document involves both a first name and a last name. Additionally, the face of the return fails to contain averments that would support the conclusion that, in accordance with the applicable statutes, service on "Georgia" was proper service on Navas.

Because Navas was never properly served, the judgment against it was entered without jurisdiction. Because the trial court lacked jurisdiction to enter the judgment, it erred in the denial of the motion to set the judgment aside.

For these reasons, I respectfully dissent.

―――――――――――――

Opinion subject to revision prior to official publication.

19